DECISION.
{¶ 1} Having reviewed the record in its entirety and considered R.C. Chapter 163, which governs eminent-domain proceedings, we hereby dismiss this appeal for lack of a final appealable order. Accordingly, the city of Cincinnati's motion to dismiss this appeal is granted. Further, we hereby lift the stay that we granted in this case on May 9, 2006.
 {¶ 2} In December 2005, plaintiff-appellee, the city of Cincinnati ("the city"), sought to appropriate the two properties located at 326 Dixmyth Avenue and 316 Dixmyth Avenue for the stated public purpose of repairing and relocating Dixmyth Avenue to promote traffic and pedestrian safety. The owners of the properties, defendants-appellants Vincent Dimasi, Holly Dimasi, and Emma Dimasi, contested this appropriation. At the hearing before the magistrate, the Dimasis argued that the city was attempting to appropriate their properties, not for the stated purpose of a "public road project," but for the private economic development of Good Samaritan Hospital ("the hospital"), which abuts Dixmyth Avenue.[1]
 {¶ 3} At the end of the hearing, the magistrate found that the city had the right to appropriate the Dimasis' properties. Specifically, the magistrate determined that this was not a case of "excess taking" and that Am.Sub.S.B. No. 167 ("S.B. 167") did not apply to this case. S.B. 167 prohibits, until December 31, 2006, a public body from using eminent domain to take private property that is not within a blighted area, "when the primary purpose for the taking is economic development that will ultimately result in ownership of that property being vested in another private person."
 {¶ 4} The Dimasis filed objections to the magistrate's decision. The trial court conducted a hearing on the objections, where the Dimasis argued for the first time that the city's appropriation of their properties constituted an excess taking in violation of the constitutions of Ohio and the United States. The trial court overruled the objections and adopted the magistrate's decision, holding that the city had the right to appropriate the Dimasis' properties. The trial court's journal entry also stated that "[p]ursuant to R.C. 163.09(B), this is not a final order. The case shall proceed to a jury trial on valuation * * *."
 {¶ 5} We agree with the trial court that its journal entry adopting the magistrate's decision is not a final appealable order. It is well settled that, under R.C. 163.09, there is no right of appeal by the landowner regarding the appropriation of his property until after the assessment of compensation by a jury. R.C. 163.09(B) provides in part, "When an answer is filed pursuant to section 163.08 of the Revised Code, and any of the matters relating to the right to make the appropriation * * * or the necessity for the appropriation are specifically denied in the manner provided in such section, the court shall set a day * * * to hear such questions. * * * An order of the court in favor of the agency on any of such questions * * * shall not be a final order for purposes of appeal."
 {¶ 6} The Ohio Supreme Court has held that "a trial court's order in favor of an appropriating agency, entered pursuant to R.C. 163.09(B), is not subject to immediate appellate review; rather, the property owner may seek appellate review only after a jury has assessed compensation and damages and the trial court enters an order, pursuant to R.C. 163.15, that disposes of the whole case."[2] In Cincinnati Gas Elec. Co. v. Pope,
the property owners had filed an appeal after the trial court had granted the city the right to take an easement across their property for the installation of a high-voltage electric transmission line, but prior to a jury assessment of the value of that easement. The Ohio Supreme Court held that the landowners' appeal was premature and dismissed it. The court stated that R.C.163.09(B) "expresses a legislative resolution that the trial court's order in favor of the appropriating agency is not immediately appealable by the property owner."[3] The court acknowledged that the legislature's reasoning was to avoid piecemeal litigation because it is only after a jury award of compensation is rendered that all rights of the parties in an eminent-domain proceeding are adjudicated.[4]
 {¶ 7} Accordingly, in reliance on Pope, this appeal numbered C-060368 is dismissed for lack of a final appealable order, and this cause is remanded to the trial court for a jury trial regarding the value of the Dimasis' properties. Upon a final order being entered in this case, the Dimasis can then appeal if they so wish.
 {¶ 8} Although we are granting the city's motion to dismiss this appeal, we believe that we have the discretion to comment briefly on the constitutional questions raised by the Dimasis during oral argument. First, we believe that the magistrate was correct in noting that S.B. 167 is not applicable to this case. S.B. 167 specifically exempts any road repair projects from its moratorium.[5] And it appears, based upon our review of the record, that this appropriation is primarily for the stated public purpose of a road project.
 {¶ 9} Second, we do not believe that this is an "excess-taking" case. Section 10, Article XVIII of the Ohio Constitution allows a municipality to appropriate property in excess over that to be occupied by the improvement so long as the acquisition is made to further the public use of the land.[6] An excessive taking under Section 10, Article XVIII arises when the appropriating municipality is actually seeking to take land that it knows will not be used for the stated public purpose.[7] That does not appear to be the case here. The city will be using the Dimasis' properties for the construction of the new road. Both parties agree that the relocated Dixmyth Avenue will cross over the Dimasis' properties. And based on oral arguments before this court, only 1/8 of an acre of the Dimasis' properties will be transferred back to the hospital because that remnant is economically unviable.
 {¶ 10} The appeal is hereby dismissed.
Appeal dismissed and stay lifted.
Hildebrandt, P.J., Doan and Painter, JJ.,
[1] In August 2005, the city and the hospital entered into an "Agreement for Relocation of Dixmyth Avenue." In the agreement, the hospital agreed to transfer several parcels of residential property, which it had privately acquired, to the city for use in the construction of the new roadway. In return, the city would transfer back to the hospital all unused land from the original transfer as well as the property associated with the original roadway.
[2] Cincinnati Gas Electric Co. v. Pope (1978),54 Ohio St.2d 12, 374 N.E.2d 406, syllabus.
[3] Id. at 14.
[4] Id. at 17.
[5] See S.B. 167, Section 2.C.1.
[6] Section 10, Article XVIII provides in part, "A municipality appropriating or otherwise acquiring property for public use may in furtherance of such public use appropriate or acquire an excess over that actually to be occupied by the improvement, and may sell such excess with such restrictions as shall be appropriate to preserve the improvement made * * *."
[7] Mentor v. Osborne (May 25, 2001), 11th Dist. Nos. 98-L-226, 98-L-228, 98-L-229, and 98-L-230.