[Cite as *Dublin v. Friedman*, 2017-Ohio-9127.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Dublin, | : | |
| Plaintiff-Appellee, | : | No. 16AP-516 |
| | | (C.P.C. No. 15CV-8664) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Karen Michelle R. Friedman et al., | : | |
| Defendants-Appellees, | : | |
| CHKRS, LLC, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 19, 2017

**On brief:** *Frost Brown Todd, LLC*, *Philip K. Hartmann*, *Scott D. Phillips*, and *Yazan S. Ashrawi*, for City of Dublin. **Argued:** *Yazan S. Ashrawi*.

**On brief:** *Karen Edwards-Smith*; *Warner Mendenhall*, for appellant. **Argued:** *Karen Edwards-Smith*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Defendant-appellant, CHKRS, LLC, appeals from a judgment of the Franklin County Court of Common Pleas, granting the motion of defendant-appellee, Karen Michelle R. Friedman, to withdraw funds deposited by plaintiff-appellee, city of Dublin, and holding that Dublin properly exercised its quick-take condemnation authority. Because (1) CHKRS did not procure on the purchase option pursuant to the lease, (2) CHKRS's challenge to Dublin's exercise of its quick-take authority is moot, and

(3) the trial court did not abuse its discretion in denying CHKRS's motion for leave to amend its answer, we affirm.

{¶ 2}   On September 30, 2015, Dublin filed a complaint for appropriation of an interest in Friedman's property. Dublin is a municipal corporation, and Friedman is the owner of real property located at 6310 Riverside Drive, Dublin, Ohio. On February 9, 2015, Dublin City Council passed a resolution declaring Dublin's intent to acquire a 0.100-acre permanent easement and a 0.096-acre temporary easement in Friedman's property, "for the public purpose of constructing a roundabout at the intersection of State Route 161 and Riverside Drive and a shared-use path adjacent to Riverside Drive." (Compl., Ex. A.)   The easements on Friedman's property concern the shared-use path portion of the project; the description of the permanent easement states that it is a "0.100 ACRE PERMANENT BIKE PATH EASEMENT."   (Emphasis sic.) (Compl., Ex. D.) On February 23, 2015, Dublin City Council passed an "emergency" ordinance, authorizing Dublin's law director to "file a petition for appropriation" of Friedman's property. (Compl., Ex. B.)

{¶ 3}   Dublin asserted in the complaint that it intended "to take immediate possession of the property interest appropriated." Dublin stated that its independent appraiser found the value of the easements to be $25,080, and that it had deposited the $25,080 "in accordance with Chapter 163 of the Ohio Revised Code and the Ohio Constitution." (Compl., at ¶ 11.)

{¶ 4}   After filing the original complaint, Dublin learned that CHKRS had a leasehold interest in the property pursuant to an unrecorded lease with Friedman. Dublin filed an amended complaint on October 21, 2015, adding CHKRS as a defendant to the action.

{¶ 5}   On November 20, 2015, Friedman filed an answer to the complaint, denying that Dublin sought the easements "for roadway purposes." Friedman alleged that Dublin sought the easements "solely and only to construct a bike path and sidewalk," and that Dublin did not have the "right to take immediate possession" of the property for such uses. (Friedman Answer at ¶ 8, 11.)

{¶ 6}   On November 23, 2015, CHKRS filed an answer alleging Dublin had already taken possession of the property, "taken down numerous trees in the permanent and

temporary easement areas," and "destroyed the natural beauty of a rocky ravine." (CHKRS's Answer at ¶ 5.) CHKRS asserted that Dublin's "appropriation of interests in and portions of Defendant's property to improve a public road [were] not necessary." (CHKRS's Answer at ¶ 8.)

{¶ 7}   On November 30, 2015, Friedman filed a motion for distribution of the $25,080 deposit. CHKRS filed a brief in response to Friedman's motion for disbursement, noting it had an "interest in the property" and asking the court to "make distribution of the deposit accordingly." (CHKRS's Response at 3.) The court scheduled the matter for a March 4, 2016 pretrial conference.

{¶ 8}   On March 9, 2016, the court issued a journal entry regarding the March 4 pretrial conference. The court noted that the conference "was held on the record," and that counsel "for all parties were present, as were representatives of the parties." The court noted that, although both defendants challenged "whether the Project qualifies for 'quick take' treatment under the Ohio Constitution," neither defendant "sought an injunction." (Mar. 9, 2016 Entry at 1.)  Friedman and Dublin informed the court they had "agreed upon a final settlement," if the court ruled that the condemnation award belonged to Friedman. (Mar. 9, 2016 Entry at 2.) The court concluded, over CHKRS's objection, that it should "first address which defendant is entitled to the deposit." (Mar. 9, 2016 Entry at 1.)

{¶ 9}   The court stated the parties had stipulated to certain "undisputed facts the court may consider in issuing a ruling on the distribution motion, and to the extent necessary on the meaning of ¶ 31 of the lease." The parties "stipulated * * * that CHKRS is current on their rent; and that CHKRS has not exercised the option to purchase." (Mar. 9, 2016 Entry at 2.) Paragraph 31 of the lease, titled "Funds Issued From City of Dublin and/or ODOT," states that "[a]ny monies dispersed by the City of Dublin or ODOT are payable to Karen Michelle Friedman until the Lessee has procured on the purchase option." (CHKRS's Answer, Ex. A ("Lease") at ¶ 31.)

{¶ 10} On March 11, 2016, Friedman filed a brief stating that, as CHKRS had not "procured on its option to purchase the Property," the lease required that "all of the monies associated with Dublin's appropriation must be distributed to Friedman." (Friedman's Brief at 2.)

{¶ 11} CHKRS filed a brief in opposition to Friedman's brief on March 18, 2016, stating that, "on March 7, 2016 CHKRS, LLC **exercised the option to purchase the property**." (Emphasis sic.) (CHKRS's Brief in Opposition at 1.) CHKRS asserted that it now had "a contract to purchase the property," and that Friedman could not convey the easements to Dublin, as she had "promised to transfer all of the property to CHKRS upon its exercise of the option." (CHKRS's Brief in Opposition at 1-2.) CHKRS attached the affidavit of Robert G. Smith to its brief, in which Smith averred that he was "a member of CHKRS, LLC" and had "exercised CHKRS, LLC's option to purchase 6310 Riverside Drive." (Smith Aff. at ¶ 1, 2.) A copy of the March 7 e-mail from Smith to Friedman was attached to Smith's affidavit. The e-mail states, "[l]et this serve as 30 day notice per the Lease Agreement * * * that CHKRS, LLC, is exercising its option to purchase said property." (Smith Aff., Ex. 1.)

{¶ 12} On March 31, 2016, CHKRS filed a motion for leave to amend its answer. CHKRS asserted that, as it had "exercised its option to purchase the property," it had counterclaims and cross-claims which "matured after the City filed its amended complaint." (CHKRS's Mot. to Amend Answer at 1.)

{¶ 13} On June 3, 2016, the court issued a journal entry denying CHKRS's motion for leave to amend its answer, granting Friedman's motion to withdraw the deposit, and holding that Dublin properly exercised its quick-take authority. Regarding the motion to withdraw, the court concluded that CHKRS had "not 'procured' the property" pursuant to ¶ 31 of the lease, as "there was never a closing." The court also noted that CHKRS had stipulated at the March 4, 2016 conference "that the Option had never been exercised and more importantly asked for no additional time to consider exercising the Option. (Mar. 4, 2016 Tr. at 19)."[1] (Decision at 9.)

{¶ 14} Regarding the quick-take, the court observed that an agency is entitled to quick-take property to make or repair public roads, and that through the project Dublin was "making or repairing one of the largest and busiest public highway intersections in this County." The court concluded that the shared-use path was a "meaningful appurtenance to the 'ordinary' roadway," as it would enhance "safety for motorists and

---

[1] CHKRS did not file a copy of the March 4, 2016 hearing transcript with this court.

users of bicycles" by "getting bicycles and other vehicles * * * completely off the motorized vehicle portion" of the road. (Decision at 12.)

{¶ 15} On June 16, 2016, the court issued a final judgment entry reciting its findings from the June 3, 2016 entry. The court noted that, pursuant to the settlement agreement, Dublin had agreed to pay Friedman $47,500 for the easements. The court ordered Dublin to pay Friedman the additional $22,420 after she received the $25,080 deposit, and ordered Friedman to "convey, transfer, and forever grant a 0.100-acre permanent easement and a 0.096-acre temporary easement" to Dublin. The court instructed Dublin to "file a certified copy of this Entry with the [Franklin County] Recorder at Dublin's cost." (Final Jgmt. Entry at 2.) The entry stated that it was "a final, appealable order for which there is no just cause for delay." (Final Jgmt. Entry at 4.)

{¶ 16} CHKRS appeals, assigning the following errors for our review:

> [I.] The trial court erred in holding that CHKRS, LLC did not exercise its option to purchase the property under the lease agreement.
>
> [II.] The trial court erred in construing paragraph 31 of the lease between Friedman and CHKRS, LLC so as [to] entitle Friedman to the funds on deposit, to permit her to convey easements to the City, to settle the eminent domain litigation and terminate the case.
>
> [III.] The trial court erred in ruling that the City of Dublin has the authority to utilize the 'quick take' provision of Chapter 163 of [the] Ohio Revised Code to acquire land for a shared use path as the City does not have the power to appropriate property for a shared use path; as it is not appropriating the property for the purpose of making or repairing a road; and as the City Council's resolution authorizing the appropriation did not authorize the City to utilize the "quick take provisions."
>
> [IV.] The trial court erred in denying CHKRS, LLC's motion to amend its answer to incorporate its property interest based on it's [sic] exercise of the purchase option, as CHKRS, LLC now is an equitable owner of the property and has a binding purchase contract.

{¶ 17} Before addressing the assignments of error, we must first address Dublin's motion to dismiss the appeal as moot. Dublin notes that CHKRS never sought a stay of

the June 16, 2016 final judgment entry, and never sought an injunction to prevent Dublin from constructing the shared-use path on the property. Dublin had the easements recorded in its name on July 27, 2016. Dublin released all necessary funds to Friedman and, therefore, argues it has satisfied the judgment. Dublin has now completed construction of the entire project. (*See* Mot. to Dismiss at Ex. A.) As such, Dublin argues that the present appeal is moot.

{¶ 18} Courts will not decide moot cases. *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, ¶ 37; *Tschantz v. Ferguson*, 57 Ohio St.3d 131, 133 (1991). "Actions are moot 'when they are or have become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations.' " *In re L.W.*, 168 Ohio App.3d 613, 2006-Ohio-644, ¶ 11 (10th Dist.), quoting *Grove City v. Clark*, 10th Dist. No. 01AP-1369, 2002-Ohio-4549, ¶ 11. A moot case " ' "seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason cannot have any practical legal effect upon a then-existing controversy." ' " *Id.*, quoting *Grove City* at ¶ 11, quoting *Culver v. Warren*, 84 Ohio App. 373, 393 (11th Dist.1948).

{¶ 19} When an appeal involves a construction project, and "the appellant fails to obtain a stay of execution of a trial court's ruling or an injunction pending appeal, and construction commences, the appeal is rendered moot." *TP Mechanical Contrs., Inc. v. Franklin Cty. Bd. of Commrs.*, 10th Dist. No. 08AP-108, 2008-Ohio-6824, ¶ 20, citing *Redmon v. Columbus City Council*, 10th Dist. No. 05AP-466, 2006-Ohio-2199. Additionally, "[i]t is a well-established principle of law that a satisfaction of judgment renders an appeal from such judgment moot." *Bob Krihwan Pontiac-GMC Truck, Inc. v. Gen. Motors Corp.*, 145 Ohio App.3d 671, 675 (10th Dist.2001). *See also Queensgate Terminals, LLC v. Cincinnati*, 1st Dist. No. C-110653, 2013-Ohio-4219, ¶ 13.

{¶ 20} "When a case is deemed moot, the defending party is entitled to a dismissal as a matter of right." *Lund v. Portsmouth Local Air Agency*, 10th Dist. No. 14AP-60, 2014-Ohio-2741, ¶ 6, citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

The rules regarding mootness apply to appeals. *Cincinnati Gas & Elec. Co. v. Pub. Util. Comm. of Ohio*, 103 Ohio St.3d 398, 2004-Ohio-5466, ¶ 15.

{¶ 21} However, "[a] cause will become moot only when it becomes impossible for a tribunal to grant meaningful relief, even if it were to rule in favor of the party seeking relief." *Joys v. Univ. of Toledo*, 10th Dist. No. 96APE08-1040 (Apr. 29, 1997). *See also State ex rel. Gaylor, Inc. v. Goodenow*, 125 Ohio St.3d 407, 2010-Ohio-1844, ¶ 11. Thus, to ascertain whether the present appeal is moot, we must determine whether it would be possible to grant CHKRS meaningful relief, if we were to rule in CHKRS's favor.

{¶ 22} CHKRS contends that the appeal is not moot based on R.C. 163.09(B)(2). By way of background, R.C. Chapter 163 "was enacted effective January 1, 1966, to establish uniform eminent domain procedure for all appropriations sought by public and private agencies." *Weir v. Wiseman*, 2 Ohio St.3d 92, 93-94 (1982). R.C. 163.01(E) defines a property "owner" as "any individual, partnership, association, or corporation having any estate, title, or interest in any real property sought to be appropriated." Accordingly, a tenant is an "owner" of property for purposes of R.C. Chapter 163. *See State ex rel. Horwitz v. Court of Common Pleas*, 65 Ohio St.3d 323, 326 (1992) (observing that "[b]y virtue of her leasehold interest, Horwitz [was] a 'property owner' as defined by R.C. 163.01(C)," and that the "General Assembly has already determined that [a lessee] has standing in [an] appropriation proceeding independent of [their lessor's] interests and notwithstanding [their lessor's] apparent acquiescence in the matter"). *Id.* at 327.

{¶ 23} R.C. 163.09(B)(1) states that "[w]hen an answer is filed pursuant to section 163.08 of the Revised Code and any of the matters relating to the right to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation are specifically denied in the manner provided in that section, the court shall set a day * * * to hear those matters." R.C. 163.08 provides that the "agency's right to make the appropriation, the inability of the parties to agree, and the necessity for the appropriation shall be resolved by the court in favor of the agency unless such matters are specifically denied in the answer and the facts relied upon in support of such denial are set forth therein."

{¶ 24} R.C. 163.09(B)(2) provides, in relevant part, as follows:

> Except as provided in division (B)(3) of this section, an order of the court in favor of the agency on any of the matters or on qualification under section 163.06 of the Revised Code shall not be a final order for purposes of appeal. An order of the court against the agency on any of the matters or on the question of qualification under section 163.06 of the Revised Code shall be a final order for purposes of appeal. If a public agency has taken possession prior to such an order and such an order, after any appeal, is against the agency on any of the matters, the agency shall restore the property to the owner in its original condition or respond in damages, which may include the items set forth in division (A)(2) of section 163.21 of the Revised Code, recoverable by civil action, to which the state consents.

{¶ 25} R.C. 163.21(A)(2) identifies witness fees, attorney fees, and other actual expenses as items a property owner may recover. R.C. 163.06 details the quick-take provisions, which permit "an agency to take immediate possession of property after making a deposit of the assessed value of the property with the court." *Village of Octa v. Octa Retail, LLC*, 12th Dist. No. CA2007-04-015, 2008-Ohio-4505, ¶ 9.

{¶ 26} The Ohio Constitution, Article I, Section 19 provides that, whenever private property "shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury." However, when property is taken "in time of war or other public exigency, * * * or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money." Ohio Constitution, Article I, Section 19. Thus, " '[p]rivate property may be taken for the purpose of making or repairing roads without first either compensating the owner or securing such compensation be made, provided compensation is subsequently determined.' " *Village of Octa* at ¶ 8, quoting 38 Ohio Jurisprudence 3d, Eminent Domain, Section 246, at 317 (2003).

{¶ 27} The quick-take provision in R.C. 163.06(B) provides that "[a] public agency appropriating property for the purpose of making or repairing roads which shall be open to the public, without charge, * * * may deposit with the court at the time of filing the petition the value of such property appropriated," as determined by the "agency, and * * *

thereupon take possession of and enter upon the property appropriated." After the R.C. 163.06 deposit "is made by the public agency," the property owner "may apply to the court to withdraw the deposit, and such withdrawal shall in no way interfere with the action." R.C. 163.06(C). *See also* R.C. 163.18 (stating that "the court shall hear evidence as to the respective interests of the owners in the property and may make distribution of the deposit or award accordingly"); *Pokorny v. Internal. Hod Carriers Bldg. & Common Laborers Union,* 38 Ohio St.2d 177, 179 (1974) (holding that "if there is more than one interest or estate in land sought to be appropriated, a bifurcated proceeding is required," whereby " 'the proper method of fixing the value of each interest or estate is to determine the value of the property as a whole, with a later apportionment of the amount awarded among the several owners according to their respective interests' "). *Id.*, quoting *Sowers v. Schaeffer*, 155 Ohio St. 454 (1951), paragraph one of the syllabus.

{¶ 28} CHKRS asserts that the last sentence of R.C. 163.09(B)(2) prevents the appeal from being moot, because, if "the right to take the property is reversed on appeal, the City must restore the property or answer in damages." (CHKRS's Brief in Opp. to Mot. to Dismiss at 8.) Indeed, if this court were to rule in CHKRS's favor on the issues presented on appeal, finding that CHKRS did procure on the purchase option, was entitled to receive money from Dublin, and that Dublin did not have a right to quick-take the property, R.C. 163.09(B)(2) provides that Dublin could be ordered to restore the property to its original condition or respond in damages. Although construction of the project is complete, and accordingly Dublin could not now restore the property to its original condition, the ability to award CHKRS's attorney fees and other damages preserves CHKRS's ability to receive meaningful relief in this appeal. *Compare State ex rel. Cincinnati Enquirer v. Heath*, 121 Ohio St.3d 165, 2009-Ohio-590, ¶ 18 (holding that "a claim for attorney fees in a public-records mandamus action is not rendered moot by the provision of the requested records").

{¶ 29} Dublin asserts that the last sentence "R.C. 163.09(B)(2) is not applicable to [the] present appeal" because "the trial court's decision in Dublin's favor is not a final appealable order." (Dublin's Reply at 3.) Dublin contends that the last sentence of R.C. 163.09(B)(2) "is *only applicable* to a decision after an appeal *by the taking agency against which a court has ruled*," whereas "an order of the court *in favor of the agency*

on matters or qualifications under R.C. 163.06 * * * is '*not a final order for purposes of appeal.*' " (Emphasis sic.) (Dublin Reply at 4.)

{¶ 30} The final appealable order rules in R.C. 163.09(B)(2) concern the time at which a party may appeal the trial court's initial ruling on the right or necessity of the appropriation. Thus, while a "trial court's order in favor of an appropriating agency, entered pursuant to R.C. 163.09(B), is not subject to immediate appellate review," such an order is reviewable "after a jury has assessed compensation and damages and the trial court enters an order, pursuant to R.C. 163.15, which disposes of the whole case." *Cincinnati Gas & Electric Co. v. Pope*, 54 Ohio St.2d 12 (1978), syllabus. *See also Horwitz* at 326; *Cincinnati v. Dimasi*, 1st Dist. No. C-060368, 2006-Ohio-3345, ¶ 5. When a court rules in favor of the agency on the preliminary issues of right or necessity, "the court shall set a time for the assessment of compensation by the jury." R.C. 163.09(B)(2). Thus, "the statutory scheme of R.C. Chapter 163 contemplates that the property owner may obtain appellate review only after the preliminary issues are decided," and "a jury assesses compensation." *Pope* at 17. "The resulting consolidation of issues on appeal thus precludes piecemeal litigation, thereby fostering the conservation of judicial energy." *Id.*

{¶ 31} The June 16, 2016 final judgment entry resolved the preliminary issue of Dublin's right to quick-take the property, but also assessed compensation and disposed of the entire case. *See Cassady v. Columbus*, 31 Ohio App.2d 100, 106 (10th Dist.1972) (noting that the "constitutional right to have a jury fix the compensation for property taken may be waived"). Accordingly, as CHKRS appealed from the final judgment entry disposing of the entire case, and not from the court's ruling on only the preliminary issues, the appeal bar in R.C. 163.09(B)(2) is inapplicable to the present matter.

{¶ 32} Dublin further asserts that "pursuant to R.C. 163.09(B)(3), CHKRS does not have a right to appeal the trial court's order in favor of Dublin in the matters CHKRS denied in its answer," because Dublin appropriated "the property interests for the purpose of making or repairing roads." (Dublin's Reply at 5.) R.C. 163.09(B)(3) provides that an owner does have "a right to an immediate appeal" on the preliminary issues, "if the order of the court is in favor of the agency in any of the matters the owner denied in the answer, unless the agency is appropriating property * * * for the purpose of making or repairing roads which shall be open to the public without charge."

{¶ 33} R.C. 163.09(B)(3), like (B)(2), concerns the time at which a party may appeal a court's ruling on the preliminary issues. R.C. 163.09(B)(3) provides an exception to the general rule of no immediate appeal in (B)(2) when a court rules in favor of the agency on a matter the owner denied in their answer. The rule reverts to the general rule of no immediate appeal when the agency is appropriating the property to make or repair a public road. However, the court's ruling on any preliminary issue is appealable after compensation has been assessed and the court disposes of the entire case. *Pope* at syllabus.

{¶ 34} Based on the foregoing, Dublin's motion to dismiss the appeal is denied.

{¶ 35} CHKRS's first assignment of error asserts the trial court erred in holding that CHKRS did not exercise its option to purchase the property. CHKRS's second assignment of error asserts the trial court erred by construing ¶ 31 of the lease to permit Friedman to receive the funds on deposit and to convey the easements to Dublin. As these assignments of error both concern the terms of the lease agreement, we address them jointly.

{¶ 36} "Under Ohio law, 'leases are contracts and, as such, are subject to traditional rules governing contract interpretation.' " *Plaza Dev. Co. v. W. Cooper Ents., L.L.C.*, 10th Dist. No. 13AP-234, 2014-Ohio-2418, ¶ 25, quoting *Heritage Court LLC v. Merritt*, 187 Ohio App.3d 117, 2010-Ohio-1711, ¶ 14 (3d Dist.) "A court's fundamental purpose in interpreting a contract is to 'determine and carry out the intention of the parties.' " *Id.*, quoting *Merritt* at ¶ 14. "In determining the intent of the parties, the court must read the contract as a whole and give effect to every part of the contract, if possible." *Drs. Kristal & Forche, D.D.S., Inc. v. Erkis*, 10th Dist. No. 09AP-06, 2009-Ohio-5671, ¶ 23. Common words are presumed to hold their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the instrument. *Plaza Dev. Co.* at ¶ 25.

{¶ 37} "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Industries, Inc.*, 15 Ohio St.3d 321, 322 (1984), citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978). "However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may

be necessary to supply the missing term." *Id.*, citing *Hallet & Davis Piano Co. v. Starr Piano Co.*, 85 Ohio St. 196 (1911).

{¶ 38} CHKRS and Friedman entered into a residential lease with an option to purchase on July 29, 2015; the lease term was from August 1, 2015 to July 31, 2018. CHKRS had to pay a "non-refundable down payment" of $8,500 before taking possession, and the down payment would "be applied towards purchase price of home at the end of the three (3) year lease if lessee chooses to purchase home." (Lease at ¶ 4.)

{¶ 39} Paragraph 30 of the lease, titled "Option to Purchase," states as follows:

> A. Lessee shall have the option to purchase said property anytime during the three year lease agreement with a 30 day prior notice to lessor. The purchase price shall be One Hundred Eighty Eight Thousand Dollars ($188,000.00) net to seller. There shall be no prepayment penalty for paying the balance of One Hundred Seventy Nine Thousand Five Hundred Dollars ($179,500.00) net to seller before the end of the three year lease, after due to Lessor at time of procurement.
>
> B. All documents and funds pertaining to the purchase of the Demised Premises shall be deposited in escrow with the Escrow Agent in time to permit the Closing to occur on a date which is not later than thirty (30) days after the Option is exercised.
>
> C. Transfer of Demised Premises shall be by general warranty deed for the premises free and clear of all encumbrances, with any dower rights released, conveying to Lessee or Lessee's nominee fee simple absolute title, free and clear of all liens, conditions, easements, limitations, covenants, reservations, claims, restrictions, and encumbrances whatsoever, except real estate taxes and assessments not then due and payable, zoning and building ordinances and governmental regulations, and those recorded easements, covenants and restrictions existing of record as of the date of this lease. Prior to depositing the deed in escrow, Lessor shall deliver to Lessee a true copy thereof. Lessor shall discharge, at Lessor's sole cost and expense, at or prior to closing, all mortgages, deeds of trusts, financing statements, and other instruments evidencing or securing the repayment of debt, judgment liens and any other liens of a liquidated amount evidencing a monetary obligation.

D. The Escrow Agent shall cause title to the Demised Premises to be searched by the title company, and if and when the title company will issue the above-required evidence of title and escrow agent has received all funds and documents to be deposited hereunder, escrow agent shall cause the deed to be filed for record and the funds to be disbursed.

E. Full and exclusive possession of the Demised Premises shall be delivered by Lessor at Closing.

F. The Lessor shall pay property taxes and keep them in good standing until Lessee's procurement of Option.

G. This lease agreement and its Option to purchase shall be assignable/assumable by the sole permission of Lessor.

H. The title company or bank or landing institution designated by Lessee shall serve as escrow agent for this transaction. This agreement shall serve as escrow instructions, subject to the escrow agent's standard conditions of acceptance to the extent not contrary to any of the terms hereof.

{¶ 40} CHKRS asserts that it "exercised the option to purchase 6310 Riverside Dr. from Friedman on March 7, 2016." (CHKRS's Brief at 13.) However, at the March 4, 2016 status conference, CHKRS stipulated to the following fact: "CHKRS has not exercised the option to purchase." (Mar. 9, 2016 Entry at 2.)

{¶ 41} "A stipulation, once entered into, filed and accepted by the court, is binding upon the parties and is a fact deemed adjudicated for purposes of determining the remaining issues in the case." *Whitehall ex rel. Fennessy v. Bambi Motel*, 131 Ohio App.3d 734, 742 (10th Dist.1998), citing *Horner v. Whitta*, 3d Dist. No. 13-93-33 (Mar. 16, 1994). *See also Augaitis v. Reichard*, 2d Dist. No. 13693 (June 28, 1993) (noting that "[a] stipulation of facts eliminates the need for proof of the truth of the statement"). "A party who has agreed to a stipulation cannot unilaterally retract or withdraw from it." *Bambi Motel* at 742. A party may only withdraw from a stipulation with the "consent of the other party," or "by leave of court upon good cause." *DeStephen v. Allstate Ins. Co.*, 10th Dist. No. 01AP-1071 (Apr. 30, 2002) (observing that, as "[n]o where in the record is there any indication that appellants attempted to withdraw or retract their stipulation," the appellants were "bound by their stipulation").

{¶ 42} There is nothing in the record demonstrating that CHKRS sought leave of court or the consent of the parties to permit CHKRS to withdraw or retract its stipulation of fact. Accordingly, CHKRS did not have the authority to unilaterally retract the stipulation, and CHKRS was therefor bound by its stipulation. Thus, the fact that CHKRS had not exercised the option to purchase was a fact deemed adjudicated for purposes of the present action.

{¶ 43} Moreover, even if we were to ignore the stipulation, CHKRS never procured on the purchase option. CHKRS contends that based solely on its March 7, 2016 e-mail it both "exercised its option to purchase the property and has procured on the option to purchase." (CHKRS's Brief at 22.) However, the lease plainly expresses that exercising the option and procuring on the purchase option were different events. *See Andover Village Retirement Community v. Cole*, 11th Dist. No. 2013-A-0057, 2014-Ohio-4983, ¶ 15 (noting that "[g]enerally in interpreting a statute or a contract, we presume that the use of different words indicates an intention that the words possess different meanings").

{¶ 44} To procure means "[t]o obtain (something), esp. by special effort or means," and to "achieve or bring about (a result)." "Procurement" means that "act of getting or obtaining something or of bringing something about." *Black's Law Dictionary* 1401 (10th Ed.2014). To "exercise" means to "implement the terms of; to execute." *Black's* at 693.

{¶ 45} "An option is an agreement to keep an offer open for a specified time; it limits the customary power of an offeror to revoke his offer prior to its acceptance." *Ritchie v. Cordray*, 10 Ohio App.3d 213 (10th Dist.1983), paragraph one of the syllabus. A real estate option is not itself "a contract to buy and sell the property, but only a contract whereby the seller agrees to leave his offer to sell open for a time-certain. Confusion often arises since the option is combined with the main offer to sell and its attendant detailed terms." *Id.* at 215. Thus, while an option "is already a binding complete contract to leave the offer open," the main offer contained in the option "does not become a contract to buy and sell unless and until its terms are accepted." *Id.*

{¶ 46} The option specified that CHKRS could purchase the property at any time during the lease term "with a 30 day prior notice to lessor," and that the documents and funds pertaining to the purchase had to be deposited in escrow "in time to permit the Closing to occur on a date which is not later than thirty (30) days after the Option is

exercised." (Lease at ¶ 30(A) and (B).)   Thus, to exercise the option under the lease, CHKRS had to notify Friedman that CHKRS intended to implement the terms of the purchase option over the 30-day period following such notice.

{¶ 47} In contrast, the lease uses the terms "procure" and "procurement" to refer to the event of CHKRS obtaining the property pursuant to the purchase option. CHKRS had to pay the balance of the purchase price to Friedman "at time of procurement," and Friedman was to continue to pay the property taxes "until Lessee's procurement of Option." (Lease at ¶ 30(A) and (F).) Thus, to have "procured on the purchase option" pursuant to ¶ 31 of the lease, CHKRS had to obtain the property pursuant to the purchase option. The purchase option in ¶ 30 detailed the specific steps CHKRS had to take to procure the property through the option.

{¶ 48} The March 7, 2016 e-mail was merely CHKRS's notice to Friedman that CHKRS intended to implement the terms of the purchase option over the following 30-days. However, after sending the e-mail, CHKRS took no steps to implement the terms of the purchase option. The option obligated CHKRS to initially designate the institution that would "serve as escrow agent for this transaction," and to then deposit the $179,500 balance of the purchase price with the escrow agent in time to permit a closing to occur within 30 days of March 7, 2016. (Lease at ¶ 30(H).) There is nothing in the record to demonstrate that CHKRS attempted to comply with these obligations.[2] *See Ritchie* at 216 (holding that, because the plaintiff "never tendered payment to defendants" pursuant to the option, the "defendants were under no obligation to convey title to a buyer who, even though pressed to close the sale, had given no indication that he could or would pay for the property").

{¶ 49} Accordingly, CHKRS did not procure on the purchase option. As such, pursuant to ¶ 31 of the lease, CHKRS was not eligible to receive money from Dublin.

{¶ 50} Generally, a tenant does have "a property right in the leasehold and, in the absence of an agreement to the contrary, is entitled to compensation if it is appropriated by eminent domain." *Carrol Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 191 (1965).

---

[2] At oral argument before this court, CHKRS's attorney stated that CHKRS "did provide an escrow and title company." However, there is nothing in the record to support counsel's statement. *See* App.R. 9(A)(1). Regardless, counsel never asserted that CHKRS attempted to deposit the balance of the purchase price in escrow.

However, "there is nothing to prevent the parties from changing their respective rights by agreement." *Id.* Thus, it is "the agreement of the parties that controls whether the lessee has a compensable property interest in the appropriated property." *Cincinnati v. Spangenberg*, 35 Ohio App.2d 168, 171 (1st Dist.1973). *See also ISHA, Inc. v. Risser*, 3d Dist. No. 1-12-47, 2013-Ohio-2149, ¶ 42; *State Rd. Assocs. v. Cuyahoga Falls*, 9th Dist. No. 24362, 2009-Ohio-2859, ¶ 19. Through ¶ 31 of the lease, Friedman and CHKRS provided that CHKRS, as a lessee, would not have a compensable interest if the property was appropriated by Dublin or Ohio Department of Transportation.

{¶ 51} CHKRS lastly contends that the court erred by "allowing Friedman" to "settle the eminent domain case and voluntarily convey the easements sought to be appropriated," as Friedman had "promised to transfer all of the property to CHKRS." (CHKRS's Brief at 19.) In an eminent domain action, however, "the conveyance [is] not a voluntary one"; as the property owner has "no choice except to convey" and "rely upon the constitutional guaranty that full compensation would be made." *Cullen & Vaughn Co. v. Bender Co.*, 122 Ohio St. 82, 93 (1930). Pursuant to the "doctrine of equitable conversion," the compensation "paid for the land taken by the exercise of the power of eminent domain in equity represents the land and is subject to all the rights of persons who had rights in the land." *Id.* at paragraph four of the syllabus.

{¶ 52} Based on the foregoing, CHKRS's first and second assignments of error are overruled.

{¶ 53} CHKRS's third assignment of error asserts the trial court erred in ruling that Dublin could exercise its quick-take authority to immediately enter the property for the purpose of constructing a shared-use path. *See* R.C. 4511.01(PPP) (defining a shared-use path as "a bikeway outside the traveled way and physically separated from motorized vehicular traffic by an open space or barrier").

{¶ 54} CHKRS, however, never sought an injunction to halt Dublin's construction on the property. *See Branford Village Condominium Unit Owners' Assn. v. Upper Arlington*, 12 Ohio App.3d 120, 121 (10th Dist.1983) (observing that, if a defendant cannot deny the agency's right to take the property in the appropriation action, "a separate injunction action may be brought to enjoin an abuse of municipal power"); *Cleveland v. Brook Park*, 103 Ohio App.3d 275, 280 (8th Dist.1995) (holding that the "Uniform

Eminent Domain Act did not change Ohio law recognizing a separate action to enjoin appropriation proceedings"); *Bd. of Edn. v. Holding Corp. of Ohio*, 29 Ohio App.2d 114, 117 (10th Dist.1971) (noting that, before the enactment of R.C. Chapter 163, "the only issue that could be tried in an appropriation matter was the matter of compensation," as property owners had to "challenge necessity * * * by way of injunction").

{¶ 55} In *Worthington v. Carskadon*, 18 Ohio St.2d 222 (1969), the city of Worthington used the quick-take provisions to immediately enter the appellants' property to construct a drainage ditch. The Supreme Court of Ohio held that the " 'quick take' by the city, *i.e.*, an immediate entry and seizure of private property prior to any jury verdict, was illegal and unconstitutional." *Id*. at 223. The court noted that Ohio Constitution, Article I, Section 19 "permits immediate entry in time of public exigency and for the purpose of public roads," while the case before it "involved only a drainage ditch." *Id*.

{¶ 56} However, the court further concluded that the "illegal seizure [was] a *fait accompli*, and the right of the city to do so is now moot. It now owns an easement and the illegality of its possession has ceased." *Id*. at 224. The court noted the "proper remedies for illegal entry upon one's property are criminal trespass and civil damages against the individuals entering, and injunction against the city and its agents." *Id. See also Cassady* at 104-05 (finding that, although the "Columbus 'quick take' ordinance [was] unconstitutional," this did not "necessitate a reversal of that judgment" as the plaintiffs "did not seek injunctive relief against the city," the sewer line was constructed, and the plaintiffs had accepted "the benefits of the 'quick take' " by withdrawing the funds Columbus deposited); *Village of Octa* at ¶ 43 (holding that the property owner's R.C. 163.09(B) hearing on remand would be "limited to a determination of whether * * * the amount taken was excessive," because, although the village did an improper quick-take of the property, the property owner "did not file for an injunction" and "the village ha[d] already constructed the newly relocated West Lancaster Road").

{¶ 57} Thus, as CHKRS did not seek an injunction, Dublin completed construction of the project. Moreover, Dublin now owns the easements on the property and has fully compensated Friedman for the easements. CHKRS's failure to procure on the purchase option precludes CHKRS from receiving money dispersed by Dublin. Thus, even if we were to find that Dublin erred in exercising the R.C. 163.06(B) quick-take authority,

CHKRS is not eligible to receive damages from Dublin under R.C. 163.09(B)(2). Accordingly, there is no relief that we could grant to CHKRS from Dublin's quick-take of the property. We find no exceptions to the mootness doctrine applicable to this issue. *See Rithy Properties v. Cheeseman*, 10th Dist. No. 15AP-641, 2016-Ohio-1602, ¶ 20.

{¶ 58} Based on the foregoing, we find that our ruling on CHKRS's first two assignments of error renders its third assignment of error moot.

{¶ 59} CHKRS's fourth assignment of error asserts the trial court erred in denying CHKRS's motion for leave to amend its answer. Civ.R. 15(A) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires." A trial court's decision to grant or deny leave to amend a pleading is reviewed under an abuse of discretion standard. *Farmers Prod. Credit Assn. of Ashland v. Johnson*, 24 Ohio St.3d 69, 72 (1986).

{¶ 60} "Prejudice to an opposing party is the most critical factor to be considered in determining whether to grant leave to amend." *Simmons v. Am. Pacific Ents., LLC*, 164 Ohio App.3d 763, 2005-Ohio-6957, ¶ 9 (10th Dist.), citing *Frayer Seed, Inc. v. Century 21 Fertilizer & Farm Chemicals, Inc.*, 51 Ohio App.3d 158, 165 (1988). Timeliness of the request is another factor to consider. *Id.* R.C. 163.22 obligates a trial court to advance appropriation proceedings "as a matter of immediate public interest and concern," and to hear such cases "at the earliest practicable moment."

{¶ 61} The trial court concluded that "CHKRS's proposed amended Answer would prejudice the other parties," as the "tendered amendment arrived late in the case, and could substantially broaden and complicate the case." The court noted that CHKRS's "legitimate legal rights in this land appropriation case were appropriately protected by its original Answer." (Decision at 6.) R.C. 163.22 obligated the court to hear the case at the earliest practicable moment, and the court concluded that granting CHKRS's late filed motion for leave would complicate and therefore delay the case. As such, we find no abuse of discretion in the court's denial of CHKRS's motion for leave to amend its answer.

{¶ 62} CHKRS's fourth assignment of error is overruled.

{¶ 63} On November 30, 2016, Dublin filed a motion to strike CHKRS's reply brief, asserting that CHKRS impermissibly raised new arguments in its reply brief. The purpose "of a reply brief is to afford the appellant an opportunity to respond to the appellee's brief,

not to raise an issue for the first time." *Hadden Co., L.P.A. v. Zweier*, 10th Dist. No. 15AP-210, 2016-Ohio-2733, ¶ 15. *See also* App.R. 16(C). "A party may not advance new arguments in its reply brief." *Clifton Care Ctr. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-709, 2013-Ohio-2742, ¶ 13.

{¶ 64} Dublin asserts that CHKRS's reply brief raised new arguments concerning "multiple procedural issues" Dublin failed to comply with before filing its complaint for appropriation. (Dublin's Motion to Strike at 3.) CHKRS asserts that it did raise the procedural issues in its initial brief. In light of our foregoing analysis of the assignments of error, however, the arguments in CHKRS's reply brief regarding Dublin's alleged failure to comply with certain pre-complaint procedures are not dispositive of the case. Because the arguments in CHKRS's reply brief "are not dispositive," they need "not be formally stricken." *Black v. Columbus Sports Network, LLC*, 10th Dist. No. 13AP-1025, 2014-Ohio-3607, ¶ 12. Dublin's motion to strike is denied.

{¶ 65} Based on the foregoing, we overrule CHKRS's first, second, and fourth assignments of error, and render its third assignment of error moot. Dublin's motion to dismiss the appeal, and motion to strike CHKRS's reply brief are denied. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Motions denied;*
*judgment affirmed.*

BRUNNER and HORTON, JJ., concur.

––––––––––––––––––––