NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0150n.06

No. 21-3759

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED
Mar 30, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| CHKRS, LLC, | ) | |
| Plaintiff-Appellant, | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE SOUTHERN DISTRICT OF |
| CITY OF DUBLIN, OHIO; DANA | ) | OHIO |
| MCDANIEL, City Manager of Dublin, Ohio, | ) | |
| individually and in his official capacity, | ) | OPINION |
| Defendants-Appellees. | ) | |
|  | ) | |

Before: NALBANDIAN, MURPHY, and MATHIS, Circuit Judges.

MURPHY, Circuit Judge. This case reaches us a second time. In the first appeal, we explained that an injured party has Article III standing to raise a legal theory as long as the theory is not frivolous—even if it might later fail on the merits. *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488–89 (6th Cir. 2021). This second appeal proves our point. We previously held that CHKRS, LLC, had standing to pursue a takings claim against the City of Dublin, Ohio. CHKRS had alleged a non-frivolous theory that the city had taken property it was leasing and that its lease contract entitled it to the payment for this taking. *Id.* at 490. But just because CHKRS has standing to pursue this claim does not mean the claim will win. So the district court rejected CHKRS's reading of the contract on remand. This time, we affirm on the merits (not for a lack of standing).

I

Karen Michelle Friedman owned a Dublin home on the east side of Riverside Drive, a road that runs north-south through the city. Deed, R.42-1, PageID 690. In July 2015, she leased this home to CHKRS (whose managing member would live at the home). Lease, R.38-1, PageID 581–84. Under the parties' three-year contract, CHKRS had an option to buy the property from Friedman at any time. *Id.*, PageID 583. Yet an eminent-domain term in the contract gave Friedman the right to receive any funds for a taking if Dublin disbursed those funds before CHKRS had "procured on the purchase option." *Id.*, PageID 584.

When the parties entered into this lease, Dublin had been building a roundabout at an intersection just north of Friedman's property. Notice, R.38-3, PageID 608. Starting in November 2015, the city planned to install a bike path to run south from this roundabout across her property. *Id.*; Letter, R.38-2, PageID 585. Exercising its eminent-domain powers, the city sued Friedman and CHKRS in state court seeking a permanent easement for the bike path and a temporary easement for its construction. Am. Compl, R.38-3, PageID 587–88. The city valued these easements at $25,080 and deposited this amount with the court. Op., R.47, PageID 770.

In the state suit, CHKRS and Friedman disagreed over who had the right to this payment. When Friedman asked the court for the funds, CHKRS's managing member emailed her to state its intent to buy the property. *Id.*, PageID 774–76. According to CHKRS, this email meant that it had "procured" on the "purchase option" and should receive the funds under the eminent-domain term. The state court disagreed and gave the funds to Friedman. *Id.*, PageID 775–77. It read the word "procured" to require CHKRS to have closed on the sale. *Id.* at 777. Friedman and Dublin settled for $47,500. *City of Dublin v. Friedman*, 101 N.E.3d 1137, 1143 (Ohio Ct. App. 2017). An appellate court later affirmed the trial court's reading of the lease contract. *Id.* at 1150–51.

This federal suit concerns events after Dublin finished the bike path. Smith Aff., R.75-1, PageID 1032–33. In July 2016, according to CHKRS's managing member, the city tore out the property's driveway, part of the bike path, and a stone wall. *Id.*, PageID 1033. Later that year, the city added storm drains, widened the path, and built a new driveway south of the old one. *Id.*

CHKRS bought the home in July 2018. Deed, R.66, PageID 875. It then sued Dublin and its city manager, Dana McDaniel (collectively, "Dublin"). As relevant now, CHKRS asserted a takings claim for the construction that occurred in the second half of 2016. Am. Compl., R.38, PageID 576–78.

The district court granted judgment on the pleadings to Dublin. *CHKRS, LLC v. City of Dublin*, 2020 WL 1331926, at *8 (S.D. Ohio March 23, 2020). The court held that CHKRS lacked Article III standing to assert a takings claim. *See id.* at *7. It noted that the state courts had already held that CHKRS lacked a compensable interest in the property. *Id.* at *6. It thus concluded that issue preclusion barred CHKRS from relitigating this issue in its federal suit. *Id.* at *5–7.

We reversed on the question of standing. *See CHKRS*, 984 F.3d at 486. The injury element of standing requires a plaintiff to allege the "invasion of a legally protected interest[.]" *Id.* at 488 (citation omitted). We reasoned that a plaintiff can satisfy this element by asserting an arguable claim on the merits. *See id.* at 488–90. And CHKRS had presented a non-frivolous claim that it had a compensable interest in the property. *See id.* at 490. CHKRS now owned the property, and one could interpret the eminent-domain term in its lease contract with Friedman to give it the right to receive any future funds that the city disbursed from that ownership point on. *See id.* But the city had yet to pay any funds for the 2016 taking. *See id.*

On remand, the district court rejected CHKRS's takings claim at the summary-judgment stage. *CHKRS, LLC v. City of Dublin*, 2021 WL 3079874, at *1 (S.D. Ohio July 21, 2021). It did

not consider whether Dublin committed a taking with its construction in the second half of 2016. *Id.* at *7. Rather, it held that CHKRS lacked a compensable interest in the property when this taking allegedly occurred. *Id.* at *4–7.

CHKRS again appealed. We review the district court's summary-judgment decision de novo. *See Trafalagar v. Miami County*, 519 F.3d 285, 287 (6th Cir. 2008).

II

The Fifth Amendment's Takings Clause (as incorporated against the states by the Fourteenth Amendment) provides: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V; *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). This appeal raises a narrow issue under this clause. The parties do not address whether Dublin's conduct in the second half of 2016—reentering the property and physically changing it—qualified as a taking. *Cf. Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072–74 (2021) (collecting cases). Nor do they address whether Dublin's prior payment to Friedman would have covered this later construction, even assuming that it did qualify as a taking. They dispute only whether CHKRS had a compensable interest in the property sufficient to succeed on this takings claim.

Two established rules show that CHKRS lacked such an interest. Under the first rule, the party who has a property interest *at the time of* a physical taking—not a party who obtains a property interest *after* the taking—has the right to payment. *See* 2 *Nichols on Eminent Domain* § 5.01[5][d][i] & n.115, Lexis (database updated 2023). Although this rule is clear, its source is not. The district court believed that it depended on Ohio law. It reasoned that the nature of a party's interest in property depends on state law rather than the Takings Clause. *See CHKRS*, 2021 WL 3079874, at *4; *see also Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't. Prot.*, 560 U.S. 702, 707 (2010). Yet the Supreme Court's cases reciting this rule have never suggested that

4

it rested on state law. *See Palazzolo*, 533 U.S. at 628; *United States v. Dow*, 357 U.S. 17, 20–22 (1958). The Court has also departed from the rule for regulatory takings without suggesting that state law affected things. *See Palazzolo*, 533 U.S. at 626–30. But this lack of clarity over the source does not matter here. Both the U.S. Supreme Court and the Ohio Supreme Court have established the same rule. *Compare id.* at 628, *with Steinle v. City of Cincinnati*, 53 N.E.2d 800, 803 (Ohio 1944). It thus applies either way.

This rule bars CHKRS from relying on its current ownership of the property as a basis for its takings claim. CHKRS agrees that Dublin's physical taking occurred in the second half of 2016. Smith Aff., R.75-1, PageID 1033. Yet Friedman still owned the property then. CHKRS did not buy it until 2018. *See* Deed, R.66, PageID 875. So Friedman (not CHKRS) had the "personal" right to payment as the owner when this purported taking occurred. 2 *Nichols*, *supra*, § 5.01[5][d][i]. The right did not "run with the land[.]" *Id.*; *see Palazzolo*, 533 U.S. at 628.

To be sure, CHKRS had a lease interest in the property at the critical point in 2016. And leaseholders have compensable interests under the Takings Clause. *See Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295, 303 (1976); *see also City of Cincinnati v. Spangenberg*, 300 N.E.2d 457, 459 (Ohio Ct. App. 1973). To calculate how much money a government must give a lessor and how much it must give the lessee, courts have first estimated the total value of the taking and then considered how to divide that amount between the two. *See* 29A C.J.S. *Eminent Domain* § 222, Westlaw (database updated Mar. 2023); *see, e.g.*, *Isely v. City of Wichita*, 174 P.3d 919, 922 (Kan. Ct. App. 2008); *United States v. .028 Acres of Land*, 347 F. Supp. 2d 273, 276 (W.D. Va. 2004).

Yet this default framework takes us to the second established rule that dooms CHKRS's claim: A lessor and a lessee may depart from the framework in their lease agreement. *See* 2 *Nichols*, *supra*, § 5.01[5][d][i]; *City of Columbus v. Huntington Nat'l Bank*, 143 N.E.2d 874, 877

(Ohio Ct. App. 1956) (per curiam). This second rule has already foreclosed CHKRS's request for the $47,000 that Dublin gave to Friedman for the 2015 taking. As the state appellate court held, CHKRS's lease contract departed from the default framework. *See Friedman*, 101 N.E.3d at 1151. The contract's eminent-domain term provided: "Any monies dispersed [sic] by the City of Dublin . . . are payable to Karen Michelle Friedman until [CHKRS] has procured on the purchase option." Lease, R.38-1, PageID 584. Because Dublin disbursed the funds to Friedman before CHKRS closed on the property, these funds belonged to Friedman under that term's plain language. *See Friedman*, 101 N.E.3d at 1151.

As we suggested before, however, this poorly worded eminent-domain term might not apply to CHKRS's present claim. *See CHKRS*, 984 F.3d at 491–92. One need not read the term to grant Friedman the categorical right to all city funds for all takings that occurred at the time that CHKRS held only a leasehold interest. Rather, one might read it more narrowly to bar CHKRS from seeking only those funds that Dublin *disbursed* when CHKRS held that interest. Although this reading would bar CHKRS's request for the prior funds, it might not bar CHKRS's current request. After all, Dublin has yet to disburse the funds that CHKRS seeks in this suit. And CHKRS has now "procured on the purchase option."

But CHKRS's litigation choices make it unnecessary to consider this potential reading of the eminent-domain term. The district court interpreted the term more broadly to apply as long as Dublin's actual *taking* (not its *disbursement* of funds) occurred before CHKRS bought the property. *CHKRS*, 2021 WL 3079874, at *5–6. In its opening brief on appeal, CHKRS did not meaningfully challenge this interpretation. It has thus forfeited the contrary reading. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011–12 (6th Cir. 2022). And while CHKRS

makes a passing reference to that potential reading in its reply brief, this argument comes "too late." *Bose v. Bea*, 947 F.3d 983, 993 (6th Cir. 2020).

CHKRS's other arguments all fail. It falls back on its leasehold interest to argue that it may seek payment for the taking. Absent the eminent-domain term, CHKRS would have a point. *See Alamo Land & Cattle*, 424 U.S. at 303. Under the district court's unchallenged reading of that term, though, CHKRS agreed to give Friedman its right to payment.

CHKRS next suggests that Dublin's taking led Friedman to breach a different term of the lease contract. The option-to-purchase term stated that Friedman would sell the home "free and clear" of "all" "easements[.]" Lease, R.38-1, PageID 583. Friedman allegedly broke this promise because Dublin held an easement on the property when CHKRS bought it. Yet CHKRS raises this theory against the wrong defendant. Even accepting CHKRS's reading of the option-to-purchase term, Dublin did not breach it. Friedman did. But CHKRS does not pursue a breach-of-contract claim against Friedman in this suit. So this theory is beside the point.

CHKRS lastly relies on Ohio decisions that grant a lessee like CHKRS an equitable ownership interest when the lease gives the lessee an option to buy. *See Cullen & Vaughn Co. v. Bender Co.*, 170 N.E. 633, 636 (Ohio 1930); *see also 23 Tracts of Land v. United States*, 177 F.2d 967, 970 (6th Cir. 1949). These decisions do CHKRS no good for the same basic reason. Even if they set a default rule of Ohio property law, they do not prevent lessors and lessees from contracting around that rule. That is what CHKRS did here.

We affirm.