RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0001p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

CHKRS, LLC,

*Plaintiff-Appellant*,

*v.*

CITY OF DUBLIN, OHIO; DANA MCDANIEL, City
Manager of Dublin, Ohio, Individually and in his
official capacity,

*Defendants-Appellees.*

No. 20-3435

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:18-cv-01366—Kimberly A. Jolson, Magistrate Judge.

Argued:  December 1, 2020

Decided and Filed:  January 4, 2021

Before:  DAUGHTREY, NALBANDIAN, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Warner Mendenhall, THE LAW OFFICES OF WARNER MENDENHALL,
Akron, Ohio, for Appellant.  Yazan S. Ashrawi, FROST BROWN TODD LLC, Columbus,
Ohio, for Appellees.  **ON BRIEF:**  Warner Mendenhall, THE LAW OFFICES OF WARNER
MENDENHALL, Akron, Ohio, for Appellant.  Yazan S. Ashrawi, Jeremy M. Grayem, FROST
BROWN TODD LLC, Columbus, Ohio, for Appellees.

───────────────

## OPINION

───────────────

MURPHY, Circuit Judge.  To establish the "standing" required for jurisdiction under
Article III of the Constitution, plaintiffs must allege the "invasion of a legally protected interest."

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted).  To establish a violation of the Takings Clause on the merits, plaintiffs must similarly prove that the government has taken a "cognizable" property interest.  *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004).  Given these overlapping requirements for jurisdiction and the merits, what happens if a plaintiff fails to prove the required property interest?  Does it show the lack of the "legally protected" interest necessary for jurisdiction?  Or does it instead show the lack of a "cognizable" interest necessary for the merits of the takings claim?

This case implicates these questions.  According to the complaint of CHKRS, LLC, the City of Dublin violated the Takings Clause when it tore out a property's driveway and replaced it with a defective driveway without paying compensation.  CHKRS had a lease interest in the property at the time and now owns it outright.  The district court nevertheless held that CHKRS failed to establish Article III standing.  The court reasoned that issue preclusion barred CHKRS from asserting any protectable interest in the property because state courts had already found that it lacked such an interest.  Yet Article III standing was not the correct doctrine.  As long as a plaintiff has asserted a colorable legal claim (and has met standing's other elements), the plaintiff has satisfied Article III and the court may resolve the claim on its merits.  And here, CHKRS has established its standing by alleging a colorable interest in the property for its takings claim.  The district court misread Ohio issue-preclusion law in reaching the contrary result.  We thus reverse the district court's standing-based dismissal of CHKRS's takings claim, but we affirm the court's dismissal of CHKRS's due-process claims on separate forfeiture grounds.

I

This appeal arises from the pleading stage, so we accept as true the well-pleaded facts in CHKRS's complaint.  *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 478 (6th Cir. 2020).  In July 2015, CHKRS entered into a three-year contract with Karen Michelle Friedman to lease Friedman's residential property in Dublin, Ohio.  The property sits on the east side of Riverside Drive, a road that runs north-south through Dublin.  The lease gave CHKRS an option to buy the property anytime during the three-year period by giving 30 days' notice.  CHKRS paid $8,500 for this purchase option, a nonrefundable amount that CHKRS could use against the purchase price if it chose to buy the home.  The lease also included a provision governing who

should receive funds from the City of Dublin if the city chose to use its eminent-domain powers to take any part of the property: "Any monies dispersed [sic] by the City of Dublin . . . are payable to Karen Michelle Friedman until [CHKRS] has procured on the purchase option."

The parties may have put this eminent-domain term into their contract because Dublin had been constructing a roundabout just north of the leased property at the intersection of Riverside Drive and another road. On September 30, 2015, as part of that project, Dublin gave a letter to the property's residents informing them that workers would be entering in November to construct a bike path. The planned path would travel along the east side of Riverside Drive and run through a portion of the leased property in between the road and the home (which sat a distance off of the road).

Over the next nine months, the parties litigated this taking in state trial court. Dublin initiated a "quick-take" action against Friedman, the property owner, to obtain a permanent bike-path easement across the property and a temporary easement for the construction. Dublin soon learned of CHKRS's lease and added it to the suit. The city's appraiser valued the easement at $25,080, and the city deposited the funds with the court. Friedman moved to have this amount paid to her. A member of CHKRS, however, emailed Friedman and indicated that CHKRS intended to buy the property. After this email, CHKRS and Friedman disputed who had the right to receive the city's funds under the lease. The lease indicated that city funds should go to Friedman until CHKRS "procured" on its "purchase option." The state court read this language (particularly, the use of the verb "procured") to require CHKRS to have actually closed on the sale. Because CHKRS's email merely informed Friedman of an intent to purchase, the court held that the email, even if it qualified as adequate notice under the lease, did not suffice to "procure" on the purchase option. The court thus found Friedman entitled to Dublin's funds. In June 2016, Friedman and Dublin settled the city's action for $47,500. *See City of Dublin v. Friedman*, 101 N.E.3d 1137, 1143 (Ohio Ct. App. 2017).

CHKRS appealed. A state appellate court affirmed the trial court's interpretation of the lease provision. *See id.* at 1150–51. The Ohio Supreme Court denied CHKRS's request for discretionary review. *See Dublin v. Friedman*, 98 N.E.3d 294 (Ohio 2018).

While this state appropriation suit progressed, Dublin undertook the planned construction. According to CHKRS's complaint, Dublin began removing the existing driveway in November 2015, and "it has not been possible to safely enter or exit the property" since that time. In July 2016, after the state trial court entered its final judgment, CHKRS's complaint alleges that the city reentered the property and tore out an initial replacement driveway that it had installed. In November of the same year, the city constructed a new driveway that veered south as it connected with Riverside Drive:



Compl., R.38, PageID#563. Dublin allegedly gave CHKRS no notice before this second round of construction, and the city also did not file another appropriation suit to pay for it.

CHKRS asserts that the new driveway layout suffers from design flaws and violates state and municipal building and traffic codes. Residents attempting to turn onto Riverside Drive out of the residence purportedly cannot see oncoming traffic approaching from the south. This northbound traffic also allegedly cannot see a car stopped on the driveway attempting to turn onto the road. And the design has purportedly made it impossible for a car travelling southbound on Riverside Drive to turn left into the property.

After the state litigation, CHKRS completed its purchase of this property. Friedman signed over her deed on July 31, 2018. CHKRS then filed federal litigation against Dublin and its city manager, Dana McDaniel (collectively, "Dublin"). CHKRS's amended complaint

asserted a takings claim and two due-process claims.  It sought payment for Dublin's second round of construction in 2016 when the city replaced the initial replacement driveway with an allegedly defective one.  CHKRS disavowed any attempt to again seek payment for the taking at issue in the state suit: the city's appropriation of the bike-path easements.

The district court granted judgment on the pleadings to Dublin.  *CHKRS, LLC v. City of Dublin*, 2020 WL 1331926, at *8 (S.D. Ohio March 23, 2020).  Starting with the takings claim, the court held that CHKRS lacked Article III standing.  *Id.* at *4–7.  It reasoned that the state courts had already held that CHKRS lacked a protectable interest in the property and that the doctrine of issue preclusion barred CHKRS from relitigating this issue.  *Id.* at *6–7.  According to the court, the absence of a protectable interest deprived CHKRS of standing to assert its takings claim.  *Id.* at *7.  Turning to the due-process claims, the court found that CHKRS had abandoned them by making no arguments in response to Dublin's motion for judgment on the pleadings.  *Id.* at *7–8.

CHKRS appeals.  We review the district court's decision de novo.  *Bates*, 958 F.3d at 479.

## II.  Takings Claim

The district court made two mistakes in concluding that CHKRS lacked Article III standing to assert its takings claim.  It mistook the substantive requirements of the Fifth Amendment's Takings Clause for the jurisdictional requirements of Article III.  And it mistook the state courts' holding on one issue (that CHKRS, as lessee, could not seek already-disbursed funds) as resolving the different issue in this case (whether CHKRS, as owner, may seek yet-to-be-disbursed funds).

## A

Article III of the Constitution vests the federal courts with only the judicial "Power" to resolve "Cases" or "Controversies."  U.S. Const., art. III, § 2.  For a dispute to qualify as an Article III "case" that a federal court may resolve, the plaintiff who brings the dispute to the court must have "standing."  *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir.

2020). To establish standing, the plaintiff must allege three well-known ingredients: that the plaintiff has suffered an injury; that the injury traces to the defendant's actions; and that a ruling for the plaintiff would likely redress this injury. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

An Article III injury, in turn, requires the "'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To allege a particularized injury, a plaintiff must show that a defendant's actions have harmed the plaintiff in a personal way, not in a generalized way that equally affects everyone else. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam). To allege a concrete injury, a plaintiff must establish that the injury is "real and not abstract," an element that considers whether the plaintiff has asserted a type of injury traditionally redressed by the courts. *Buchholz*, 946 F.3d at 861 (quoting *Spokeo*, 136 S. Ct. at 1548). To allege the invasion of a legally protected interest, a plaintiff must show that the plaintiff has a right to relief if the court accepts the plaintiff's interpretation of the constitutional or statutory laws on which the complaint relies. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89–90 (1998) (citing *Bell v. Hood*, 327 U.S. 678, 682–83, 685 (1946)).

At first blush, CHKRS's complaint seems to plead an obvious Article III injury. (We assess a complaint's standing allegations using the same rules that we would apply for the merits. *See Lujan*, 504 U.S. at 561; *Bates*, 958 F.3d at 480.) CHKRS alleges that Dublin's agents trespassed onto property that it was then leasing and now owns, that these agents destroyed this property's driveway, and that they replaced it with a defective driveway months later. Is this injury particular? Yes, it is personal to CHKRS rather than scattered among the public at large. *See Lance*, 549 U.S. at 439. Is this injury concrete? Yes, damage caused by a trespass is a type of injury that has been litigated in court for centuries. Restatement (First) of Torts § 158 (Am. L. Inst. 1934); 3 William Blackstone, *Commentaries on the Laws of England* *209; *cf. Knick v. Township of Scott*, 139 S. Ct. 2162, 2175–77 (2019). Does CHKRS plausibly allege the invasion of a legally protected interest? Yes, "[i]t has long been established" under the Takings Clause that a lessee has a right to payment for the value of the lessee's interest in

property taken through eminent domain.  *Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295, 303 (1976).

The district court nevertheless held that CHKRS did not adequately allege the last element: the invasion of a legally protected interest.  Because CHKRS's lease contract with Friedman contained a provision giving Friedman the right to city-distributed funds until CHKRS bought the property, the district court held that CHKRS contracted away any protectable property interest.  *See CHKRS*, 2020 WL 1331926, at *4–7.  Respectfully, this holding conflated the merits of CHKRS's takings claim with CHKRS's standing to bring it.  In fact, the district court relied on one of our decisions identifying the requirements of a Fifth Amendment takings claim, not of Article III standing.  *See Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004).  Yet just because a plaintiff's claim might fail on the *merits* does not deprive the plaintiff of *standing* to assert it.  *See Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018).  "If that were the test, every losing claim would be dismissed for want of standing." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092 (10th Cir. 2006) (en banc).

But that is not the test.  Instead, once the plaintiff has alleged a "colorable" or "arguable" claim that the defendant has invaded a legally protected interest, the plaintiff has met this element of an Article III injury.  *See Reoforce, Inc. v. United States*, 853 F.3d 1249, 1264 (Fed. Cir. 2017); *Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 900 (7th Cir. 2012).  Only if the claimed protected interest is "wholly insubstantial and frivolous" does a claim's failure on its merits turn into a jurisdictional defect.  *Steel Co.*, 523 U.S. at 89 (quoting *Bell*, 327 U.S. at 682–83); *Walker*, 450 F.3d at 1093; *see Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (per curiam).

Consider breach-of-contract claims.  Defendants often defend against those claims on the ground that they did not breach the contract—i.e., that they did not invade the plaintiffs' "contract" interest under a proper reading of the contract's terms.  If successful, this sort of defense would show that the contract claim fails, but it would not show the lack of standing. *See, e.g.*, *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 463 (6th Cir. 2020) (citing *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017)); *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287–90 (6th Cir. 2018).  Consider also what would happen if the

rule were otherwise. Standing is necessary for a court's subject-matter jurisdiction, so the court has a duty to raise a standing defect (like any other jurisdictional defect) on its own initiative. *See Steel Co.*, 523 U.S. at 94–96. If the argument that the defendant did not breach the contract eliminated the plaintiff's standing to pursue the contract claim, courts would have a duty to raise forfeited contract provisions whenever those provisions might show that the defendant did not breach.

Under these rules, CHKRS has asserted at least an "arguable" interest in the property sufficient to establish its standing despite the lease provision invoked by the district court. *Reoforce*, 853 F.3d at 1264 (quoting *Steel Co.*, 523 U.S. at 89). The lease provision says that monies disbursed "by the City of Dublin . . . are payable to Karen Michelle Friedman until [CHKRS] has procured on the purchase option." CHKRS's complaint alleges that it has owned the property since 2018, so there is no dispute that it has now "procured on the purchase option." This provision thus plausibly gives CHKRS, not Friedman, the right to any future funds that Dublin may pay *after* CHKRS bought the property. And CHKRS's complaint alleges that Dublin has yet to pay for the alleged taking that it now raises in this suit.

B

The district court held that issue preclusion barred CHKRS from raising its current reading of the lease provision. Dublin alternatively argues that substantive takings law bars CHKRS's arguments. Neither contention deprives CHKRS of Article III standing.

1

From well before our country's founding, judicial tribunals have recognized the need for doctrines like claim preclusion (or "res judicata") and issue preclusion (or "collateral estoppel") to protect the finality of their judgments and prevent parties from relitigating the same disagreement in perpetuity. *See San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 336–37 (2005). When a case implicates one of these doctrines, the full-faith-and-credit statute tells us to follow the preclusion rules adopted by the courts that adjudicated the prior proceedings. *Id.* at 336; 28 U.S.C. § 1738. We thus must look to Ohio preclusion law in this case.

The Ohio Supreme Court has adopted both claim and issue preclusion. *See Brooks v. Kelly*, 43 N.E.3d 385, 386 (Ohio 2015) (per curiam). Under Ohio claim-preclusion law, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Township*, 653 N.E.2d 226, 229 (Ohio 1995). This doctrine turns on whether the "claim" (or factual occurrence) that was previously litigated is the same "claim" that a party asserts now. CHKRS says that the factual "claim" in the prior suit involved only the taking of a permanent bike-path easement and a temporary construction easement. And it alleges that Dublin's later actions in removing the replacement driveway and adding another one did not fall within the scope of this prior "claim." *See CHKRS*, 2020 WL 1331926, at *3 n.1. The validity of this allegation need not detain us now because Dublin has not raised any claim-preclusion defense at this stage.

This appeal instead involves issue preclusion, a doctrine that can apply even when the factual "claims" are different across the two cases. Our court has not been consistent in how we have described the elements of Ohio issue-preclusion law, sometimes using a three-part test and other times a four-part test. *Compare Bowman v. City of Olmsted Falls*, 756 F. App'x 526, 531 (6th Cir. 2018), *with Daubenmire v. City of Columbus*, 507 F.3d 383, 389 (6th Cir. 2007). Yet we do not think the different tests establish different rules. At bottom, the Restatement of Judgments describes issue preclusion in this way: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982). The Ohio Supreme Court has followed this general approach. *See Fort Frye Tchrs. Ass'n, OEA/NEA v. State Emp. Rels. Bd.*, 692 N.E.2d 140, 144 (Ohio 1998); *cf. Bradley v. Reno*, 749 F.3d 553, 557 (6th Cir. 2014). It has said that the parties in the second case must be identical to or in privity with the parties in the first suit. *See Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 987 (Ohio 1983). It has said that the prior case must have ended in a final judgment. *See Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 118 (Ohio 2006). And it has said that the relevant "issue" must have been "actually" and "necessarily" litigated in the prior case (meaning that the court resolved the issue and that its resolution was

essential to the judgment rather than dicta).    *See State ex rel. Davis v. Pub. Emps. Ret. Bd.*, 899 N.E.2d 975, 982–83 (Ohio 2008).

In this case, Dublin cannot meet the "actually litigated" element because the issue that was litigated in the state action is different from—not "identical" to—the issue in the second one. *Goodson*, 443 N.E.2d at 987; *see Davis*, 899 N.E.2d at 982; *cf. Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 982 (6th Cir. 2000).    Begin with the prior suit.    The "issue" in that case was whether Friedman should receive all of Dublin's funds for the bike-path easements even though CHKRS had emailed Friedman about its intent to exercise its purchase option.    *Friedman*, 101 N.E.3d at 1151.    The state courts interpreted the phrase "procure[] on the purchase option" in the lease provision to require CHKRS to have "obtain[ed] the property" from Friedman, not simply to have given her notice of its intent to purchase.    *Id.* at 1150–51.    Because CHKRS had not completed the purchase of the property and so had not procured on the purchase option during the state suit, CKHRS "was not eligible to receive" the funds that Dublin had disbursed at that time.    *Id.* at 1151.

This case raises a different question.    CHKRS has now "obtain[ed]" the property.    *Id.* at 1150.    And, according to the complaint, Dublin has yet to disburse any funds for the purportedly distinct taking that CHKRS alleges (the removal of the initial replacement driveway and the construction of another defective one).    This case thus asks: Does CHKRS have a right to *yet-to-be* disbursed funds from Dublin now that it actually *owns* the property?    And the state courts' conclusion that CHKRS lacked any right to *already* disbursed funds at a time when it had only *notified* Friedman of its intent to purchase does not resolve this separate contract question.

The district court reached a contrary result by defining the "issue" at too high a level of generality: "Whether [CHKRS] has a compensable property interest in the Lease."    *CHKRS*, 2020 WL 1331926, at *7.    This framing overlooks the changed facts across the two cases.    Just because CHKRS lacked a right to compensation under the lease provision when it had notified Friedman only of its intent to purchase does not mean that it lacked such a right after it bought the property.    To be clear, we need not resolve now whether the lease provision gave CHKRS this post-purchase right to payment.    We simply hold that issue preclusion does not apply

because this contract issue is not "identical" to the contract issue resolved by the state courts. *Goodson*, 443 N.E.2d at 987.

2

Dublin additionally asserts that CHKRS lacks Article III standing based on a different argument about the scope of the Takings Clause. For direct (as opposed to regulatory) takings, the Takings Clause generally vests the right to compensation solely in the party with a property interest at the time of the taking, not in a party who obtains its property interest after the taking. *See, e.g.*, *United States v. Dow*, 357 U.S. 17, 20–22 (1958); *cf. Palazzolo v. Rhode Island*, 533 U.S. 606, 626–30 (2001). And, according to CHKRS's complaint, the alleged taking in this case occurred in 2016 when CHKRS still had only a lease interest in the property. Dublin thus argues that CHKRS's after-the-fact purchase could not give it Article III standing to litigate the earlier taking.

This merits argument also does not deprive CHKRS of the "colorable" interest in the property that it needs for standing to assert its takings claim. *Booker-El*, 668 F.3d at 900. To begin with, the substantive takings law on which Dublin relies "may be altered by the agreements entered into by the parties." 2 *Nichols on Eminent Domain* § 5.01[5][d][i], Lexis (database updated 2020). And the lease provision in this case arguably gives any payment right to the owner at the time of the city's *disbursement* of funds, not at the time of its *taking*. Regardless, CHKRS had a protectable lease interest in the property at the time, *see Alamo Land & Cattle*, 424 U.S. at 303, and CHKRS cites caselaw suggesting that a lease with a purchase option creates an equitable-ownership interest too. *See Cullen & Vaughn Co. v. Bender Co.*, 170 N.E. 633, 636–37 (Ohio 1930); *see also 23 Tracts of Land v. United States*, 177 F.2d 967, 970 (6th Cir. 1949).

At day's end, we do not decide these merits questions because of the "standing" posture in which this appeal has arisen. We hold only that CHKRS has standing because it has asserted a nonfrivolous argument that it has a protectable property interest to support its takings claim.

### III. Due-Process Claims

That leaves CHKRS's due-process claims. The district court held that CHKRS abandoned these claims by failing to respond to Dublin's arguments about them in its motion for judgment on the pleadings. *CHKRS*, 2020 WL 1331926, at *7–8. On appeal, CHKRS's briefing entirely ignored the district court's forfeiture rationale. CHKRS has thus forfeited any claim that the court erred in finding the claims abandoned. *See, e.g.*, *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522–23 (6th Cir. 2019); *Sampson v. Gee-Cram*, 655 F. App'x 383, 386 n.2 (6th Cir. 2016).

\* \* \*

In sum, we reverse the district court's decision granting judgment on the pleadings to Dublin on CHKRS's takings claim, we affirm its decision on CHKRS's due-process claims, and we remand the case for further proceedings consistent with this opinion.