NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0576n.06

No. 20-3463

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MARY A. MARTIN; DONALD L. PARKS, JR., | ) | **FILED** |
|  | ) | Dec 09, 2021 |
| Plaintiffs-Appellants, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| THE BANK OF NEW YORK MELLON | ) | ON APPEAL FROM THE |
| CORPORATION; THE BANK OF NEW YORK | ) | UNITED STATES DISTRICT |
| MELLON CORPORATION, TRUSTEE FOR THE | ) | COURT FOR THE SOUTHERN |
| CERTIFICATEHOLDERS CWALT, INC. ASSET- | ) | DISTRICT OF OHIO |
| BACKED CERTIFICATES SERIES 2004-16CB, | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) | OPINION |
|  | ) |  |

Before: SUTTON, Chief Judge; STRANCH and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** When the Bank of New York Mellon initiated a foreclosure action against Mary A. Martin and Donald L. Parks, Jr.'s home, they objected and argued that the Bank lacked standing to bring a foreclosure action against them. An Ohio court overruled their objection and granted the Bank's motion for summary judgment. They did not fare any better in later state-court proceedings. So they sued the Bank in federal court, alleging state-law fraud, conversion, wrongful foreclosure, civil conspiracy, and negligence claims arising from the foreclosure proceedings. Those claims, however, are barred, as we explain below. Simply put, the doctrine of issue preclusion forbids our second-guessing of the Ohio court's determination that the Bank was a party in interest in the foreclosure action. We affirm the district court's grant of the Bank's motion to dismiss.

I.

In 2000, Martin and Parks bought a home together in Harrison, Ohio, and four years later they refinanced the home with All State Home Mortgage. The refinancing documents included a promissory note secured by a mortgage on their home. Both the note and the mortgage were purchased in 2008, but Martin and Parks say they "were never given complete and accurate information from any party regarding who properly held" the note and mortgage, despite their best efforts at tracking down the owner.

The Bank of New York Mellon[1] purported to answer their question in January 2009, when it initiated foreclosure proceedings in the Hamilton County Common Pleas Court. The Bank alleged that Martin and Parks had defaulted on the note and mortgage and attached a copy of the note to the foreclosure complaint. But Martin and Parks were skeptical of its ownership claim. For one, the note from the Bank did not show that it owned or held the note or mortgage. It also showed a modification: Parks's name had been scribbled over.

Martin and Parks later learned that the mortgage had been assigned to the Bank one day before the foreclosure was initiated. The assignment was robo-signed by an employee of Mortgage Electronic Registrations Systems, Inc. The Bank also filed an undated allonge to the note in the foreclosure action in July 2009. But Martin and Parks allege that the assignment and allonge were created to cover up the truth: according to them, the Bank never actually owned the note and mortgage. In their view, the Bank had to file the documents "to fix the broken Foreclosure record and chain of title/possession of the Note and Mortgage" after All State Home Mortgage was raided by the Federal Bureau of Investigation as part of a mortgage fraud investigation in June 2009.

---

[1] We refer to Appellees, The Bank of New York Mellon Corporation and The Bank of New York Mellon, As Trustee for the Certificateholders CWALT, Inc. Asset-Backed Certificates Series 2004-16CB, collectively as The Bank of New York Mellon or as simply the Bank.

Martin and Parks eventually explained their skepticism to the magistrate in the foreclosure proceedings, objecting to the grant of summary judgment in the Bank's favor. They argued that the Bank's failure to produce an original, unaltered copy of the note meant it did not actually own the note and lacked standing to initiate the foreclosure. The magistrate was unpersuaded by the standing argument and again granted summary judgment to the Bank. The trial court overruled Martin and Parks's objections to the magistrate's decision and adopted it. Martin and Parks timely appealed but later voluntarily dismissed the appeal.[2]

Eighteen months after summary judgment was entered for the Bank, Martin and Parks returned to the Court of Common Pleas with a motion for relief from the foreclosure judgment under Ohio Civ. R. 60(B)(5). The magistrate denied the motion, and Martin and Parks objected. This time they persuaded the trial judge, who agreed that the Bank lacked standing because of deficiencies in the record of ownership of the note, set aside the judgment, and dismissed the foreclosure complaint. The Bank appealed.

While the Bank's appeal was pending, the Ohio Supreme Court closed Martin and Parks's only path to relief. In *Bank of America, N.A. v. Kuchta*, it held that when a party elects not to appeal an adverse decision, res judicata bars using a motion for relief from a judgment to raise the issue of standing. 21 N.E.3d 1040, 1045 (Ohio 2014). So the appeals court held that Martin and Parks's motion was barred because they failed to appeal the issue of the Bank's standing. *Bank of N.Y. Mellon v. Martin*, No. C-140314, 2015 WL 3937842, at *6 (Ohio Ct. App. June 26, 2015). Martin and Parks sought review at the Ohio Supreme Court, but it declined to hear the case. *Bank of N.Y. Mellon v. Martin*, 49 N.E.3d 320 (Ohio 2016).

---

[2] Martin also individually filed a bankruptcy petition, but the proceedings were never completed.

Out of state-court options, Martin and Parks brought this action in federal court.[3]  They

allege real-estate fraud, conversion, wrongful foreclosure, civil conspiracy, and negligence, all

under Ohio law.  The Bank moved to dismiss the complaint for lack of subject-matter jurisdiction,

failure to state a claim, and res judicata.  The district court granted the motion and dismissed the

complaint.  Martin and Parks timely appealed, and we review the district court's grant of the

Bank's motion to dismiss de novo.

II.

The Bank argues that we may affirm the district court on either claim-preclusion or issue-

preclusion grounds.  As a federal court sitting in diversity jurisdiction, we apply the substantive

law of the forum state, Ohio, including its rules governing claim- and issue-preclusion.  The Ohio

rules in that regard look to the law of the state court that adjudicated the prior proceeding—here

again, Ohio law—to determine whether it would attach preclusive effect to a judgment.  *Ohio ex*

*rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (quoting *ABS Indus., Inc. ex rel.*

*ABS Litig. Trust v. Fifth Third Bank*, 333 F. App'x 994, 998 (6th Cir. 2009)).  Ohio law recognizes

"the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment,

and issue preclusion, also known as collateral estoppel."  *State ex rel. Davis v. Pub. Empls. Ret.*

*Bd.*, 899 N.E.2d 975, 981–82 (Ohio 2008) (per curiam) (citation omitted).  We need only discuss

issue preclusion to resolve this appeal.[4]

---

[3] The two other named defendants, Litton Loan Servicing LP and Reisenfeld & Associates LPA, LLC, are not involved in this appeal.

[4] While the Bank argued at the district court that both claim and issue preclusion were appropriate reasons to dismiss the complaint, it acknowledges that issue preclusion "was not directly addressed in the briefing" below. (Appellee Br., at 21).  Martin and Parks do not object to our consideration of issue preclusion here, and "[w]e may affirm the district court on any basis supported in the record."  *Boler v. Earley*, 865 F.3d 391, 414 (6th Cir. 2017) (citing *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002)).

Under Ohio law, issue preclusion "holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Davis*, 899 N.E.2d at 982 (quoting *Ft. Frye Teachers Ass'n, OEA/NEA v. State Empl. Relations Bd.*, 692 N.E.2d 140, 144 (Ohio 1998)). We have set out Ohio issue-preclusion law inconsistently in the past, "sometimes using a three-part test and other times a four-part test," but "we do not think the different tests establish different rules." *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 490–91 (6th Cir. 2021). So we follow the "general approach" taken by the Ohio Supreme Court. *Id.* at 491. It requires (1) "that the parties in the second case must be identical to or in privity with the parties in the first suit," (2) "that the prior case must have ended in a final judgment," and (3) "that the relevant 'issue' must have been 'actually' and 'necessarily' litigated in the prior case (meaning that the court resolved the issue and that its resolution was essential to the judgment rather than dicta)." *Id.* (citing *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 987 (Ohio 1983); *Glidden v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 118 (Ohio 2006); *Davis*, 899 N.E.2d at 982–83). We take each element in turn.

*Same Parties or Privity*. Martin and Parks do not dispute that they and the Bank, acting in its capacity as trustee, were parties to the foreclosure action. But they argue in reply that the Bank "in its individual capacity," also named as a defendant, "is a distinct legal entity."

Under Ohio law, "privity 'is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the *res judicata*.'" *Brown v. City of Dayton*, 730 N.E.2d 958, 962 (Ohio 2000) (quotation omitted). The Ohio Supreme Court has "applied a broad definition to determine whether the relationship between

the parties is close enough to invoke the doctrine." *Kirkhart v. Keiper*, 805 N.E.2d 1089, 1092 (Ohio 2004).

Martin and Parks did not dispute that the Bank as trustee and the Bank individually were "close enough" at the district court. They cannot do so here for the first time, much less in a reply brief. *See Swanigan v. FCA US LLC*, 938 F.3d 779, 788 (6th Cir. 2019) (declining to address a waived issue); *Bormuth v. County of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017) (en banc) ("[A]rguments made to us for the first time in a reply brief are waived." (quotation omitted)). And even if they could, they offer no authority to support their argument that the defendants here do not meet this first element. *See Everly v. Everly*, 958 F.3d 442, 448 n.6 (6th Cir. 2020) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed forfeited." (cleaned up)).

*Final Judgment*. There was also a final judgment on the merits. The Ohio magistrate heard Martin and Parks's argument that the Bank lacked standing in the foreclosure action and rejected it. They objected at the trial court, and the trial court overruled the objections and awarded summary judgment to the Bank. Martin and Parks voluntarily dismissed their direct appeal. The grant of summary judgment terminated the foreclosure action on the merits. *Hapgood v. City of Warren*, 127 F.3d 490, 493–94 (6th Cir. 1997) (citation omitted).

Their later motion to set aside the judgment does not alter our finality analysis. Although the trial judge set aside the judgment, that ruling was reversed by an Ohio appellate court, and the judgment was reinstated. *Bank of N.Y. Mellon v. Martin*, 2015 WL 3937842, at *6. That appeal was resolved on res judicata grounds because a motion to set aside a judgment "cannot be used as a substitute for an appeal" in Ohio. *Id.* (citing *Kutcha*, 21 N.E.3d at 1045). The Ohio Court of Appeals thought the trial court's judgment was final, and we agree.

*Actually and Necessarily Litigated*. Most of this dispute turns on this final element. The Bank "must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Goodson*, 443 N.E.2d at 985 (collecting cases). In general, when "the same evidence would sustain both issues, then the two issues are the same" for issue-preclusion purposes. *Ft. Frye*, 692 N.E.2d at 145 (citation omitted).

The relevant issue here is whether the Bank was an actual party in interest, and thus had standing, to prosecute the foreclosure action. Martin and Parks's claims here depend on a resolution in their favor on this issue. They argue that the Bank was not a party in interest because its documents were insufficient and fraudulently submitted. They made that argument in Ohio court. An evidentiary hearing was held. They objected to the determination made after that hearing. And ultimately, they declined to appeal. The Ohio courts have rejected their arguments regarding the Bank's standing, so issue preclusion applies. *See, e.g.*, *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 278–79 (6th Cir. 2016) (applying issue preclusion to similar improper-foreclosure claims where an Ohio court found a lender was "the proper mortgagee").

*Fraud and the Interests of Justice*. Martin and Parks fall back on two arguments: that their allegations of fraud render either claim or issue preclusion inapplicable and that its application is not in the interests of justice.

But as Martin and Parks acknowledge in their brief, "fraud by a party does not undermine the conclusiveness of a judgment unless the fraud was extrinsic, that is, it deprived the opposing party of the opportunity to appear and present his or her case." 63 Ohio Jur. 3d Judgments § 378. They were not deprived of this opportunity. Rather, they made the same fraud allegations in Ohio court when arguing that the Bank lacked standing to initiate the foreclosure action. Fraud does not bar issue preclusion's application here.

Finally, the interests-of-justice analysis weighs in favor of applying issue preclusion. Ohio courts refrain from applying issue preclusion where "fairness and justice would not support it." *State ex rel. Estate of Miles v. Village of Piketon*, 903 N.E.2d 311, 317 (Ohio 2009). Martin and Parks rely on an unpublished 1993 decision of the Ohio Court of Appeals involving a child-support dispute, *Berry v. Berry*, No. 13746, 1993 WL 295096 (Ohio Ct. App. July 28, 1993). *Berry*, however, involved circumstances quite different from those presented here. *Id.* at *5 (citation omitted) (applying the interests-of-justice exception where "the strict application of *res judicata*" would "contravene[] the strong public policy of insuring the continued well-being of children throughout their minority" by preventing a mother from ever petitioning for increased child support). We are not convinced that the Ohio Supreme Court would extend the interests-of-justice exception to apply here. Martin and Parks undoubtedly feel wronged by the Bank and think the Ohio courts ruled incorrectly on their objections. But to respect comity with Ohio courts and the finality of their judgments, we cannot reassess that determination.

## III.

An Ohio court considered and rejected the argument underpinning each of Martin and Parks's federal-court claims—that the Bank lacked standing to bring the foreclosure action. Under Ohio issue-preclusion law, another court cannot now consider that issue anew. We affirm the district court's dismissal of Martin and Parks's complaint.