NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0437n.06

Case No. 23-3222

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 12, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MERIBETHE R. INGRAM, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| JARED J. REGANO, Administrator of the Estate of Joseph V. Regano, deceased; FRED E. BOLDEN, II, | ) | |
| | ) | |
| | ) | OPINION |
| Defendants-Appellees. | ) | |

Before: SUTTON, Chief Judge; SUHRHEINRICH and SILER, Circuit Judges.

PER CURIAM. Meribethe Ingram sued school officials in federal court over their handling of her sexual harassment and retaliation complaints. The district court dismissed all six of her claims: four of them on issue preclusion grounds, two for failure to state a claim. We affirm most of the challenged rulings but reverse on one feature of the issue preclusion ruling.

I.

Ingram worked at Lewis Elementary School as a substitute teacher and testing assistant and volunteered as a reading recovery specialist, backup media specialist, and parent workroom coordinator.

In December 2017, Ingram reported a claim of sexual harassment and hostile work environment to the school principal. The next day, the principal notified Ingram that she was no longer welcome at Lewis and prevented her from working there.

A few weeks later, Joseph V. Regano, the District Superintendent, and Fred E. Bolden, the Assistant Superintendent, investigated Ingram's claims. Bolden notified Ingram that she, too, was under investigation for her actions. Ingram filed an administrative complaint with the School District against Regano and Bolden. According to Ingram, the investigation against her and the handling of her initial complaint amounted to retaliation for her sexual-harassment claims.

On March 14, 2018, Regano found that Ingram was the harasser. The disposition barred Ingram from further access to the school for substitute employment or volunteering. The next month, a second disposition denied her retaliation claims.

In response, Ingram filed this lawsuit in federal court. Her complaint raised six claims: (1) due process; (2) equal protection; (3) sex discrimination under Title VII of the Civil Rights Act of 1964; (4) sex discrimination and retaliation under Ohio law; (5) breach of fiduciary duty; and (6) civil conspiracy.

After filing her federal lawsuit, Ingram filed a lawsuit in state court against the school's principal and members of the School Board (but not Regano or Bolden). The state case raised retaliation and other claims over the handling of her complaints. The state court granted summary judgment to the principal and Board on Ingram's retaliation claims. It found that Ingram's removal from the school did not qualify as an adverse employment action because she continued to work at other schools in the District.

In the federal proceeding, the district court granted Regano and Bolden's motion to dismiss two of Ingram's six claims—due process and breach of fiduciary duty—for failure to state a

cognizable claim. In a separate order, it dismissed Ingram's four remaining claims on issue preclusion grounds due to the state court's ruling. This appeal followed.

II.

*Issue preclusion.* Issue preclusion prevents parties from relitigating claims "'actually' and 'necessarily' litigated" in a prior case. *Tarrify Props., LLC v. Cuyahoga County*, 37 F.4th 1101, 1109 (6th Cir. 2022) (quotation omitted). After a court enters a "valid and final judgment" in one case, preclusion bars relitigating the same issues in another case. *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 491 (6th Cir. 2021) (quotation omitted). In this instance, the preclusion law of Ohio, the State that "rendered the initial judgment," applies. *Tarrify Props.*, 37 F.4th at 1109.

Ohio law prevents a later court from relitigating issues "actually and directly litigated" by a "court of competent jurisdiction." *State ex. rel. Jefferson v. Russo*, 150 N.E.3d 873, 875 (Ohio 2020) (quotation omitted). To apply, issue preclusion requires a prior holding that "answer[ed] *the same question*" at stake in the current proceeding. *United States v. United Techs. Corp.*, 782 F.3d 718, 726 (6th Cir. 2015).

At one level, issue preclusion does apply. The state court's holding answers one overlapping question. In its decision, the state court addressed whether Ingram "suffered an injury or harm from a retaliatory action" by looking at her loss of substitution and volunteer privileges at the school. R.60-1 at 5. The court concluded that she did not suffer an adverse employment action "when she was removed from Lewis and substituted at another elementary school." *Id.* at 8. That ruling binds the federal court action. The two issues are precisely the same, and the reality that the *defendants* were not the same in the two actions does not make a difference under Ohio law. Ohio law does not require identical defendants because Ingram had a "'full and fair' opportunity to litigate" this issue in state court. *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978,

983–85 (Ohio 1983) (quotation omitted) (holding mutuality is not required when a party "clearly had his day in court on the specific issue"); *see McAdoo v. Dall. Corp.*, 932 F.2d 522, 525 (6th Cir. 1991). Ingram argued the point and lost. She cannot resurrect it now.

Ingram resists this conclusion. Ingram argues she did not have a fair opportunity to litigate this issue because she never deposed Regano and Bolden in state court. But Ohio law does not require Regano and Bolden to participate in the state case; the point of the "full and fair opportunity" exception is to *relax* the identity requirement, not to smuggle into it a deposition requirement.

Ingram also claims that issue preclusion does not apply because Regano and Bolden raised it in a motion for judgment on the pleadings. But the federal rules allow issue preclusion at the motion to dismiss stage. *See Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 275 (6th Cir. 2016).

The state court ruled that Ingram's removal from Lewis Elementary does not qualify as an adverse employment action. That ruling binds us here.

Even so, the state court did not answer whether other acts by Regano and Bolden amounted to an adverse employment action. Ingram's federal complaint, as it happens, raises one other general theory of adverse employment action—that the defendants did not conduct a fair and unbiased investigation. She claims that Regano and Bolden violated mandatory policies by "not investigating allegations of harassment raised by female employees against male employees" and "advising female complainants to 'be professionals' and 'assuage the egos' of their male harassers." R.1 ¶ 93. Ingram could argue that this violation constitutes an adverse employment action by altering the terms or conditions of her employment—namely, the District's anti-harassment policies. *See* 42 U.S.C. § 2000e-2(a)(1). This argument may prove unsuccessful on

summary judgment, but the state court's holding does not make it implausible on a motion to dismiss. In fact, the district court held in a prior order that these allegations sufficed at the pleading stage to "plausibly allege[]" a disparate treatment claim. R.28 at 14.

Regano and Bolden point out that each of Ingram's discrimination and retaliation claims requires an adverse employment action, and the state court ruled that her removal did not qualify. True enough. But this addresses the point "at too high a level of generality" and ignores "the changed facts across two cases." *CHKRS*, 984 F.3d at 491. Unlike claim preclusion, we do not ask whether Ingram could have argued before the state court that the discriminatory policies qualify as an adverse employment action. *Cf. O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007). No party raises claim preclusion here, likely because Ingram filed the federal lawsuit first and the state case had different defendants. Our concern here instead centers on what the state court actually adjudicated. Ingram must prove an adverse employment action for her discrimination and retaliation claims. While she may no longer litigate whether her removal as a substitute qualifies, she may litigate whether the other allegedly discriminatory actions satisfy the test.

Regano and Bolden insist that Ingram's adverse employment theory fails as a matter of law for a separate reason. They point out that investigations generally do not count as cognizable adverse employment actions. *See Groening v. Glen Lake Cmty. Schs.*, 884 F.3d 626, 631 (6th Cir. 2018) ("[E]mployers are permitted to investigate their employees . . . ."); *Kuhn v. Washtenaw County*, 709 F.3d 612, 626 (6th Cir. 2013) (rejecting argument that investigation "changed the form or conditions of . . . employment"). That may be true. But it may also be true that a sufficiently biased investigation could pass muster. *Cf. Peltier v. United States*, 388 F.3d 984, 988–89 (6th Cir. 2004). This case comes to us on the pleadings, not after a summary judgment

5

record has been compiled. No less importantly, the state court did not address Ingram's investigation theory. While this may be a slim reed on which to preserve the claim, we think the district court should address it in the first instance and should do so based on the discovery that has since been completed in the case.

The district court barred Ingram's equal protection, Title VII sex discrimination, state law sex discrimination/retaliation, and civil conspiracy claims on issue preclusion grounds. Because the state court addressed only Ingram's restriction from Lewis Elementary School, issue preclusion does not bar these claims in their entirety.

III.

Ingram also challenges the district court's ruling that she failed to plausibly allege a due process violation or breach of fiduciary duty.

*Due process*. The Fourteenth Amendment prohibits States from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Ingram claims "a property interest in her work and assignments at Lewis Elementary." R.1 ¶ 75.

A property interest requires a "legitimate claim of entitlement" to some benefit, not merely "an abstract need or desire." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). State law defines property interests. *Id.* In Ohio, substitute teachers, save for minor exceptions not applicable here, lack the right to continued employment. Substitutes work "temporarily" to fill absences, are "subject to termination when such services no longer are needed," and are "not . . . entitled" to the notice given ordinary teachers when the school chooses not to re-hire them. Ohio Rev. Code Ann. § 3319.10. All of this means that substitute teachers in Ohio "have no property interest in their continued employment." *Lautermilch v. Findlay City Schs.*, 314 F.3d

6

271, 274 (6th Cir. 2003). In the absence of a cognizable property interest, Ingram's due process claim fails.

Ingram resists this conclusion on the ground that she had an oral contract with the principal to teach exclusively at Lewis Elementary. But even assuming the existence of such a contract, that does not change things. An agreement to work at just one location does not entitle a substitute teacher to continued employment. It says only where she would work, not whether she would work.

Ingram argues that her roles as a testing assistant and backup media specialist created a property interest. But Ingram never shows why those additional responsibilities gave her the right to tenured employment. Under Ohio law, "a general or indefinite hiring" for all manner of responsibilities still creates an at-will employment relationship, not an entitlement to continued employment. *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529 (Ohio 2002).

Ingram adds that she adequately pleaded an injury to her reputation. But that does not suffice by itself. "[T]here is no viable, free standing, federal due process claim arising from injury to one's reputation." *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 586 (6th Cir. 2004). A reputational injury still requires a corresponding injury to a protected interest. *Paul v. Davis*, 424 U.S. 693, 711 (1976).

*Breach of fiduciary duty.* Ingram claims that the defendants' investigation breached their fiduciary duties. In Ohio, a fiduciary relationship arises when "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Ed Schory & Sons, Inc. v. Soc'y Nat'l Bank*, 662 N.E.2d 1074, 1081 (Ohio 1996) (quotation omitted). "[T]he main question" to answer "is

7

whether a party agreed to act primarily for the benefit of another." *Hope Acad. Broadway Campus v. White Hat Mgmt., L.L.C.*, 46 N.E.3d 665, 676 (Ohio 2015).

Regano and Bolden did not agree to act primarily for Ingram's benefit. The Board appoints the Superintendent, who then serves as the Board's "executive officer." Ohio Rev. Code Ann. § 3319.01. In this role, Regano oversaw investigations and enforced the Board's policies against harassment. Bolden, as Regano's assistant, had similar responsibilities. None of these roles required Regano or Bolden to act "primarily for the benefit" of Ingram. *Hope Acad.*, 46 N.E.3d at 676.

Ingram nonetheless maintains that the investigation created a fiduciary duty that required Regano and Bolden to treat her interests the same as the School District's interests. Her sole authority in support of this claim comes from a 1996 case holding that a broker entrusted with earnest money had a fiduciary duty to remain a neutral agent when handling the funds. *In re Appeal of Sheaffer*, 686 N.E.2d 1382, 1390 (Ohio Ct. App. 1996). That is a markedly distinct setting from this one. *Sheaffer* concerned an individual subject to a contractual provision that required strict neutrality, requiring the agent to follow only the written directions of both parties when dispersing funds. *Id.* at 1385. Regano and Bolden lacked a similar or even remotely similar contractual provision.

## IV.

*Attorney-client privilege.* Ingram challenges the district court's order denying her request to obtain access to settlement-related emails by the defendants. The emails contain a discussion between Regano, Bolden, and the School District's attorney about a potential settlement. Regano shared these emails with a third party (the teacher Ingram accused of harassment), which typically waives the attorney-client privilege. *In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 527

(6th Cir. 2022). Even so, the district court ruled that Regano lacked authority to waive the privilege on behalf of the School District and denied Ingram access to them. As a mixed question of law and fact, we review the district court's decision with fresh eyes. *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 517 (6th Cir. 2014).

The parties agree that the authority to waive the attorney-client privilege rests with the "the actor whose duties most closely resemble those of management." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351 (1985). In Ohio, local boards of education "manage[] and control" the school districts. Ohio Rev. Code Ann. § 3313.47; *see id.* § 3313. The School Board, not Regano, thus retains authority to exercise the privilege.

Ingram does not directly dispute this. She instead points out that Regano, as the Superintendent, served as "the executive officer for the board." *Id.* § 3319.01. The Board's representative also said Regano "manage[d] the day-to-day operations of the District." R.92-2 at 87. Neither point makes a difference. Take Regano's role as "executive officer." In the corporate context, "[t]he authority of officers derives legally from that of the board of directors." *Weintraub*, 471 U.S. at 348 n.4. So too here: Ohio's statutes place the Board in control of the District, and any authority afforded to the Board's executive officer stems from the authority of the Board itself. To have authority to waive the privilege, in other words, Regano needed the Board to give it to him. The only evidence Ingram points to on this score is Regano's control over the day-to-day affairs of the District. Nothing indicates that "day-to-day" control, however, includes authority to waive the attorney-client privilege.

We reverse the district court's issue preclusion order but affirm its rulings on Ingram's due process, fiduciary duty, and attorney-client privilege claims.