[Cite as *Dyer's Manufactured Hous. Community v. McCoy*, 2026-Ohio-330.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Dyers Manufactured Housing
Community,                                          :

                                                   :
          Plaintiff-Appellee,
                                                   :

v.                                                 :           No. 25AP-264
                                                             (M.C. No. 2024 CVG 030002)
                                                   :
Jeffery McCoy,
                                                   :           (REGULAR CALENDAR)
          Defendant-Appellee,
                                                   :
Brittany McCoy,
                                                   :
          Intervenor-Appellant.
                                                   :

D E C I S I O N

Rendered on February 3, 2026

**On brief:** *Willis Law Firm, LLC*, and *Dimitrios G. Hatzifotinos*; *Law Office of Elizabeth J. Birch*, and *Elizabeth J. Birch*, for appellee. **Argued:** *Dimitrios G. Hatzifotinos*.

**On brief:** *Legal Aid of Southeast and Central Ohio*, and *Patrick A. Maloney*, for appellant. **Argued:** *Patrick A. Maloney*.

APPEAL from the Franklin County Municipal Court

JAMISON, J.

{¶ 1} Intervenor-appellant, Brittany McCoy ("Brittany"), appeals a judgment of the Franklin County Municipal Court that denied her motion to vacate a writ of execution and impose sanctions pursuant to R.C. 2323.51. For the following reasons, we reverse that judgment and remand for further proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  Defendant-appellee, Jeffrey McCoy ("Jeffrey"), rented a lot from plaintiff-appellee, Dyers Manufactured Housing Community ("Dyers"), for his manufactured home. Jeffrey died on February 24, 2024.  In late February or early March 2024, Jeffrey's daughter, Brittany, informed Dyers's park operator, Graciela Gonzalez, about Jeffrey's death.  At that time, Gonzalez told Brittany that she would have to seek approval to live in her father's manufactured home because she did not reside in the park.  Brittany never moved into her father's manufactured home.

{¶ 3}  On April 9, 2024, Brittany initiated a probate action to resolve matters related to her father's estate.  As part of the probate process, Brittany sought to obtain the title to her father's manufactured home.

{¶ 4}  On July 8, 2024, Dyers commenced a forcible entry and detainer action against Jeffrey.  In the complaint, Dyers did not name the specific subsection of R.C. 1932.02 under which it sought to evict Jeffrey from the manufactured home park.  Dyers, however, alleged that due to Jeffrey's failure to pay the rent due for May 2024, Jeffrey was in breach of R.C. 1932.02.  Thus, presumably, Dyers petitioned to evict Jeffery pursuant to R.C. 1923.02(A)(10), which permits forcible entry and detainer actions "[a]gainst manufactured home park residents who have defaulted in the payment of rent or breached the terms of a rental agreement with a park operator."[1]

{¶ 5}  A trial was held on the forcible entry and detainer action before a magistrate. Being dead, Jeffrey did not attend.  Gonzalez, the park operator, appeared on behalf of Dyers.  Under questioning by Dyers's attorney, Gonzalez testified that the "[t]enants were still behind [on rent] and [] still there[.]"  (July 22, 2024 Tr. at 2.)  Gonzalez also testified that Dyers was evicting Jeffrey for "nonpayment."  *Id.* at 2-3.  Based on Gonzalez's testimony, the magistrate granted judgment in Dyers's favor, finding "plaintiff has proven non-payment of rent and the allegations set forth in the complaint by a preponderance of the evidence."  (July 22, 2024 Mag.'s Decision.)  In a judgment issued July 23, 2024, the

---

[1] Dyers did not seek to evict Jeffrey pursuant to R.C. 1923.02(A)(12), which permits a forcible entry and detainer action "[a]gainst a manufactured home park resident, or the estate of a manufactured home park resident, who as a result of death or otherwise has been absent from the manufactured home park for a period of thirty consecutive days prior to the commencement of an action under this division and whose manufactured home . . . has been left unoccupied for that thirty-day period, without notice to the park operator and without payment of rent due under the rental agreement with the park operator[.]"

trial court adopted the magistrate's decision and entered a judgment of restitution for Dyers.

{¶ 6} On September 24, 2024, the Franklin County Court of Common Pleas, Probate Division, issued an entry that relieved Jeffrey's estate from administration and transferred Jeffrey's manufactured home to Brittany. On that same day, the Madison County Clerk of Courts issued Brittany a certificate of title for the manufactured home Jeffrey had owned. Immediately after receiving the certificate of title, Brittany met with Gonzalez and showed her the certificate of title. Gonzalez told Brittany that the certificate of title was fraudulent.

{¶ 7} On October 7, 2024, Gonzalez signed an affidavit that Dyers submitted to the trial court to obtain a writ of execution. In her affidavit, Gonzalez testified that Jeffrey, "to the best of [her] knowledge, [] [was] not deceased," and "the manufactured home [was] still titled in [his] name." (Gonzalez Aff. at ¶ 3, 7.) Gonzalez stated that she had delivered to Jeffrey, "by posting and regular mail," a 14-day notice, which, pursuant to R.C. 1923.12(A), a park operator must provide to the titled owner of the manufactured home to inform the owner to remove the home from the park. *Id.* at ¶ 5.

{¶ 8} Gonzalez also averred in her affidavit that she had conducted a title search, apparently to satisfy her statutory duty under R.C. 1923.12(C)(1) to "search . . . appropriate public records that relate to the manufactured home, . . . and make . . . reasonably diligent inquires, for the purpose of identifying any persons who have an outstanding right, title, or interest in the home." R.C. 1923.12(C)(2) requires a park operator to provide any person who has an outstanding right, title, or interest in the manufactured home with a written notice to remove the home from the park or arrange the sale of the home within 21 days from delivery of the notice. Gonzalez, however, testified in her affidavit that she provided no one with such a notice. Finally, Gonzalez stated that the estimated value of the manufactured home was less than $3,000.

{¶ 9} Three days later, on October 10, 2024, Brittany again met with Gonzalez. On this occasion, Gonzalez made a copy of Brittany's certificate of title to the manufactured home. Gonzalez asked Brittany what price she would offer the manufactured home for sale. When Brittany said she intended to sell the home for $5,000, Gonzalez responded that Dyers planned to sell it for more money. Ironically, on the same day Gonzalez told Brittany

this, Dyers received a certification from the Franklin County Auditor approving Gonzalez's valuation of the manufactured home at less than $3,000.

{¶ 10} On October 15, 2024, Dyers filed an application for a writ of execution supported by Gonzalez's affidavit and the auditor's certification. The trial court entered a judgment the next day issuing the writ of execution. On that same day, Dyers obtained a certificate of title to the manufactured home pursuant to the writ of execution.

{¶ 11} On October 21, 2024, Gonzalez left Brittany a voicemail, in which Gonzalez stated that Dyers now had title to the manufactured home and Brittany would not be able to sell it. The next day, Brittany's attorney contacted Dyers's attorneys, expressing concern that Dyers had obtained the writ of execution with an affidavit that Gonzalez signed knowing it contained false information. In the email, Brittany's attorney requested that Dyers's attorneys advise Dyers not to sell the manufactured home.

{¶ 12} Despite this request, Dyers sold the manufactured home to a third party for $7,500. A new certificate of title to the manufactured home was issued to the third party on October 29, 2024.

{¶ 13} On November 5, 2024, Brittany moved to intervene, vacate the October 16, 2024 judgment issuing the writ of execution, and sanction Dyers pursuant to R.C. 2323.51. Brittany attached an affidavit to her motion in which she testified to the probate process and her interactions with Gonzalez.

{¶ 14} In its memorandum in opposition, Dyers did not respond to Brittany's arguments for intervention or sanctions. Dyers also did not provide any evidence to contradict the facts Brittany stated in her affidavit regarding Gonzalez's knowledge of Jeffrey's death or the transfer of the title to Brittany. Rather, Dyers solely argued for denial of the motion to vacate. According to Dyers, Brittany was at fault for not intervening in the action earlier and notifying it of the probate action. Dyers also asserted that the motion to vacate was moot because the trial court could not grant Brittany any meaningful relief, even if it were to vacate the writ of execution.

{¶ 15} In its February 19, 2025 entry, the trial court granted Brittany's motion to intervene. However, the trial court denied Brittany's motion to vacate as moot because "the judgment which she [sought] to vacate was fully enforced prior to the filing of her motion." (Feb. 19, 2025 Entry at 1.) The trial court also denied Brittany's motion for sanctions

because it found that she did not timely file it. Brittany now appeals the trial court's February 19, 2025 judgment to this court.

## II.  ASSIGNMENTS OF ERROR

{¶ 16} On appeal, Brittany assigns the following errors:

> [1.] The court erred when it denied intervenor's motion to vacate as moot because the underlying action was not properly commenced and all subsequent entries are void.

> [2.] The court erred in its interpretation of "final judgment" for the purposes of calculating the time requirements of R.C. 2323.51.

## III.  LEGAL ANALYSIS

### A.  First Assignment of Error – Is this Matter Moot?

{¶ 17} By her first assignment of error, Brittany argues that the trial court erred in denying her motion to vacate the October 16, 2024 judgment on the grounds that the case had become moot. We agree.

{¶ 18} Under the mootness doctrine, courts generally do not decide moot cases. *Cyran v. Cyran*, 2018-Ohio-24, ¶ 9. A case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *State ex rel. Citizens for Community Values, Inc. v. DeWine*, 2020-Ohio-4547, ¶ 7. Consequently, "when events occur that make it impossible for a court to grant 'any effectual relief whatever,' a case is moot." *Maurent v. Spatny*, 2025-Ohio-5002, ¶ 11, quoting *Miner v. Witt*, 82 Ohio St. 237, 239 (1910); *accord Dublin v. Friedman*, 2017-Ohio-9127, ¶ 21 (10th Dist.), quoting *Joys v. Univ. of Toledo*, 1997 Ohio App. LEXIS 1765, *7 (10th Dist. Apr. 29, 1997) (holding that a case " 'will become moot only when it becomes impossible for a tribunal to grant meaningful relief, even if it were to rule in favor of the party seeking relief' "). On the other hand, if an actual controversy remains because it is possible for a court to grant meaningful relief, then the case is not moot and consideration of the merits is warranted. *Id*. The issue of mootness presents a question of law, which an appellate court reviews de novo. *Telhio Credit Union v. Bryant*, 2019-Ohio-4866, ¶ 18 (10th Dist.); *Intralot, Inc. v. Blair*, 2018-Ohio-3873, ¶ 29 (10th Dist.).

{¶ 19} Here, the trial court concluded that this case, and the motion to vacate, were moot because the October 16, 2024 writ of execution was fully enforced prior to the filing of the motion to vacate. In reaching that conclusion, the trial court relied on precedent in

which this court addressed the mootness of judgments granting writs of restitution in forcible entry and detainer actions. Such judgments only determine the right to immediate possession of property. *Greenlawn Cos. v. Canty*, 2024-Ohio-3412, ¶ 25 (10th Dist.). " ' "If immediate possession is no longer at issue because the [tenant] vacates the premises and possession is restored to the [landlord], then continuation of the forcible entry and detainer action or an appeal of such action is unnecessary, as there is no further relief that may be granted." ' " *Id.*, quoting *T&R Properties, Inc. v. Wimberly*, 2020-Ohio-4279, ¶ 8 (10th Dist.), quoting *Rithy Properties, Inc. v. Cheeseman*, 2016-Ohio-1602, ¶ 15 (10th Dist.). In other words, if a tenant moves from the leased property after a successful forcible entry and detainer action, then the tenant's appeal of the judgment granting the writ of restitution becomes moot. *Canty* at ¶ 26; *Reading Hills L.L.C. v. Bryant*, 2024-Ohio-312, ¶ 10-11 (10th Dist.); *Olentangy Commons Owner L.L.C. v. Fawley*, 2023-Ohio-4039, ¶ 11-12 (10th Dist.); *Cheeseman* at ¶ 16. In those circumstances, mootness arises because "[n]o further relief can be afforded to the ousted tenant." *Picnic Place Dev. L.L.C. v. Preston*, 2024-Ohio-6024, ¶ 4 (8th Dist.). Reversal of a judgment granting the landlord restitution of the premises, which would allow the tenant to remain in possession of the premises, provides no relief to a tenant that has already moved out.

{¶ 20} The trial court erred by determining mootness by looking to whether the October 16, 2024 judgment was fully enforced. Mootness, instead, turns on a court's ability to grant effectual, meaningful relief. *Maurent* at ¶ 11; *Friedman* at ¶ 21. Therefore, to decide whether this case is moot, we must examine whether it is possible for the trial court to grant Brittany any effectual, meaningful relief if it vacates the October 16, 2024 judgment issuing the writ of execution.

{¶ 21} Brittany based her motion to vacate, in part, on Civ.R. 60(B)(3), which permits a trial court to set aside a judgment for "[f]raud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party." "[T]he fraud, misrepresentation, or other misconduct contemplated by Civ.R. 60(B)(3) refers to deceit or other unconscionable conduct committed by a party to obtain a judgment." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 13. A court may vacate a judgment pursuant to Civ.R. 60(B)(3) when an adverse party presents the court with materially false testimony, and the falsity is not discovered until after judgment. *Dublin v. RiverPark Group, L.L.C.*,

2022-Ohio-1294, ¶ 20 (10th Dist.); *Luke v. Roubanes*, 2018-Ohio-1065, ¶ 23-24 (10th Dist.).

{¶ 22} Brittany alleges in her motion to vacate that Dyers obtained the writ of execution by relying on the materially false testimony contained in Gonzalez's October 7, 2024 affidavit. The necessary steps for obtaining a writ of execution are laid out in R.C. 1923.12, 1923.13, and 1923.14. First, a park operator must obtain a judgment of restitution in an eviction action. R.C. 1923.12(A). Then, if the resident's manufactured home remains abandoned or unoccupied for three days after the entry of the judgment of restitution, the park operator must provide "the titled owner" of the home a written notice to remove the home from the manufactured home park within 14 days of delivery of the notice. *Id.* "The park operator shall deliver or cause the delivery of the notice by personal delivery to the owner or by ordinary mail sent to the last known address of the owner." *Id.* Next, the park operator must "search [] the appropriate public records that relate to the manufactured home, . . . and make . . . reasonably diligent inquires, for the purpose of identifying any persons who have an outstanding right, title, or interest in the home." R.C. 1923.12(C)(1). If that search is fruitful, the park operator must provide the person with an outstanding right, title, or interest a written notice to remove the home from the park or arrange its sale within 21 days from the delivery of the notice. R.C. 1923.12(C)(2). The park operator must deliver the notice in person or by ordinary mail to the person's last known address. *Id.*

{¶ 23} Notably, a park operator must follow a different procedure to obtain a writ of execution when a resident of a manufactured home park dies. R.C. 1923.12(D) sets forth the process when a deceased resident's estate is evicted, and R.C. 1923.12(E) sets forth the process when the evicted resident is the titled owner of the manufactured home and dies prior to the removal of the home from the park. Broadly, R.C. 1923.12(D) and (E) state that, if a probate court grants administration with respect to the resident's estate, then the probate court will determine the disposition of the manufactured home. R.C. 1923.12(D); 1923.12(E)(2). If no probate court grants administration with respect to the resident's estate, then the park operator must "search [] the appropriate public records that relate to the manufactured home, . . . and make . . . reasonably diligent inquiries, for the purpose of identifying any persons who have an outstanding right, title, or interest in the home." R.C. 1923.12(E)(3). If the park operator identifies any person with an outstanding right, title, or

interest in the home, the park operator must provide that person with a written notice to remove the home from the park or arrange for the sale of the home within 21 days from delivery of the notice. R.C. 1923.12(E)(3)(a). If the person does not timely remove the home or arrange for its sale, then the park operator may obtain a writ of execution. *Id.*

{¶ 24} In this case, the facts Gonzalez submitted in her affidavit made it appear that she complied with R.C. 1923.12. She represented that Jeffrey was not deceased, and Jeffrey remained the titled owner of the manufactured home. She averred that she delivered a 14-day notice to Jeffrey, the titled owner. According to Brittany, Gonzalez knew when she signed her affidavit that Jeffrey was deceased, and Brittany was the titled owner of the manufactured home. Brittany thus maintains that Gonzalez testified falsely in her affidavit.

{¶ 25} The trial court relied on Gonzalez's affidavit testimony when granting the writ of execution. Had the trial court known of the facts as stated by Brittany, it may have refused to issue a writ of execution pending an inquiry into whether R.C. 1923.12(D) or (E) applied. Alternatively, the trial court may have denied the writ due to Gonzalez's failure to provide the necessary notice to Brittany. Either as "titled owner" or as a "person who ha[d] an outstanding right, title, or interest in the manufactured home," Brittany was owed a written notice to remove or sell the home. *See* R.C. 1923.12(A); 1923.12(C)(2); 1923.12(E)(3)(a). Gonzalez delivered the 14-day notice to the manufactured home knowing that it could never reach a titled owner because Jeffrey was dead, and Brittany did not live in the home. Gonzalez gave no 21-day notices to any person with an outstanding right, title, or interest in the home because she claimed in her affidavit that no such person existed. Brittany, therefore, never received the statutorily required notice. At the time Gonzalez signed her affidavit, she knew Brittany owned the manufactured home and, thus, had an interest in the home entitling her to notice.

{¶ 26} In short, if Gonzalez had admitted in her affidavit to Jeffrey's death, Brittany's interest in the manufactured home, and the lack of notice to Brittany, the issuance of the writ of execution would not have occurred. By allegedly falsely stating Jeffrey was alive and the titled owner of the manufactured home, Gonzalez led the court to believe that she had followed the statutory process to secure a writ of execution, when she had not. The trial court, consequently, could conclude that Dyers obtained the writ of

execution through fraud, and grant Brittany relief from the writ of execution pursuant to Civ.R. 60(B)(3).

{¶ 27} Dyers, however, argues that this action is moot because even if the trial court grants that relief, it cannot return title of the manufactured home to Brittany. Based on the writ of execution, the Franklin County Clerk of Courts issued to Dyers a certificate of title for the manufactured home. Dyers points out that it sold the manufactured home to a third party, who now holds certificate of title to the home.

{¶ 28} Because the definition of "[m]otor vehicle" includes "manufactured homes," manufactured homes are issued certificates of title pursuant to the Ohio Certificate of Motor Vehicle Title Act ("Certificate of Title Act"). R.C. 4505.01(A). "[A] person must possess a certificate of title to claim ownership of a motor vehicle." *Allan Nott Ents., Inc. v. Nicholas Starr Auto, L.L.C.*, 2006-Ohio-3819, ¶ 15, citing R.C. 4505.04. Upon determining that a motor vehicle is stolen, the Registrar of Motor Vehicles must cancel any certificate of title "if, upon investigation, it appears that such certificate of title was improperly issued." R.C. 4505.17. Construing these provisions, the Supreme Court of Ohio has determined that "a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice, even if the certificate used in the purported transfer appears valid on its face." *Allan Knott Ents.* at ¶ 41. In other words, the "real" owner, from whom the motor vehicle was stolen, prevails over a good-faith purchaser who purchases from a thief. *Id.* at ¶ 31. For purposes of the Certificate of Title Act, a stolen motor vehicle includes those vehicles stolen by fraud or deception. *Id.* at ¶ 41.

{¶ 29} Given this precedent, a finding that Gonzalez used fraud to obtain a certificate of title for the manufactured home would invalidate both Dyers's certificate of title and the title of the third-party purchaser of the manufactured home. If Dyers procured the manufactured home through fraud, then it could not convey a valid title to the third-party purchaser, even if the third-party purchaser did not know about the fraud. The trial court, therefore, can provide Brittany with effectual, meaningful relief if it vacates the writ of execution on the basis of Civ.R. 60(B)(3). A finding by the trial court that Dyers engaged in fraud would mean that certificates of title were improperly issued to Dyers and the third-party buyer. Those certificates of title, therefore, would be subject to cancellation. *See* R.C. 4505.02; 4505.17(A). That would leave Brittany as the last legitimate titleholder of the

manufactured home.  Accordingly, we conclude that this action is not moot, and we sustain Brittany's first assignment of error.

### B. Second Assignment of Error – Is the October 16, 2024 Judgment a Final Judgment?

{¶ 30}  By her second assignment of error, Brittany argues that the trial court erred in determining that she did not timely file her motion for sanctions.  We agree.

{¶ 31}  Brittany moved for sanctions pursuant to R.C. 2323.51, which states, "at any time *not more than thirty days after the entry of final judgment* in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal."  (Emphasis added.)  R.C. 2323.51(B)(1).  The trial court denied Brittany's motion on the basis that she failed to move for sanctions within 30 days of a final judgment.  Brittany moved for sanctions on November 5, 2024.  Thus, the trial court implicitly determined that its October 16, 2024 judgment issuing the writ of execution was not a final judgment.

{¶ 32}  " 'The term "final judgment" as used in R.C. 2323.51 is synonymous with the term "final order" as defined by R.C. 2505.02.' "  *State ex rel. DiFranco v. S. Euclid*, 2015-Ohio-4915, ¶ 10, quoting *Adams v. Pitorak & Coenen Invests., Ltd.*, 2013-Ohio-4102, ¶ 12 (11th Dist.).  R.C. 2505.02(B) sets forth different types of final orders, and includes "[a]n order that affects a substantial right made . . . upon a summary application in an action after judgment."  R.C. 2505.02(B)(2).  Although R.C. 2505.02 does not define "a summary application in an action after judgment," courts interpret this phrase to mean a request for post-judgment trial court intervention that a court can grant without holding lengthy proceedings.  *Quesinberry v. Quesinberry*, 2021-Ohio-4680, ¶ 20 (2d Dist.); *State v. Horsley*, 2018-Ohio-4203, ¶ 7 (4th Dist.).  Thus, "orders in the aid of execution on a judgment are ones made on a summary application after judgment."  *Gary Moderalli Excavating, Inc. v. Trimat Constr., Inc.*, 2015-Ohio-2475, ¶ 12 (4th Dist.).  Likewise, a judgment that overruled a property owner's objections to a writ of execution and permitted a judgment holder to proceed with executing on the inventoried personal property was made upon summary application after judgment.  *UBS Fin. Servs., Inc. v. Lacava*, 2017-Ohio-7916, ¶ 7 (9th Dist.).

**{¶ 33}** Here, Dyers sought the writ in aid of execution on an earlier judgment—the judgment of restitution. The trial court entered judgment granting the writ summarily, based only on Gonzalez's affidavit and the auditor's certification. We, therefore, conclude that the trial court's October 16, 2024 judgment issuing a writ of execution to enforce the judgment of restitution is an order made upon summary application after a judgment.

**{¶ 34}** Next, we must consider whether the October 16, 2024 judgment affected one of Brittany's substantial rights. A "[s]ubstantial right" is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). The right to retain ownership of property is a substantial right. *Bank One, N.A. v. DWT Realty, Inc.*, 2006-Ohio-7271, ¶ 33 (7th Dist.). Because the October 16, 2024 judgment resulted in Brittany losing the ownership of the manufactured home, we conclude that the judgment deprived Brittany of a substantial right.

**{¶ 35}** In sum, as a final order that affected a substantial right made upon summary application after a judgment, the October 16, 2024 judgment qualifies as a final judgment. Brittany, therefore, timely filed her motion for sanctions within 30 days of a final judgment. Accordingly, we determine that the trial court erred in denying Brittany's motion for sanctions, and we sustain her second assignment of error.

## IV. CONCLUSION

**{¶ 36}** For the foregoing reasons, we sustain Brittany's first and second assignments of error. We reverse the judgment of the Franklin County Municipal Court, and we remand this cause to that court for further proceedings consistent with law and this decision.

*Judgment reversed;*
*cause remanded.*

BOGGS, P.J., and DINGUS, J., concur.

_____